1  JASON M. WUCETICH (STATE BAR NO. 222113)
   jason@wukolaw.com
2  DIMITRIOS V. KOROVILAS (STATE BAR NO. 247230)
   dimitri@wukolaw.com
3  WUCETICH & KOROVILAS LLP
   222 North PCH Boulevard, Suite 2000
4  El Segundo, CA 90245
   Telephone:    (310) 335-2001
5  Facsimile:    (310) 364-5201

6  Attorneys for Plaintiff
   DAVID SHESKI, individually
7  and on behalf of all others similarly situated

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  DAVID SHESKI, individually and on        CASE NO.
    behalf of all others similarly situated,
13                                            **CLASS ACTION**

14              Plaintiff,                    **COMPLAINT FOR:**

15       v.                                   **(1) VIOLATION OF THE TELEPHONE
                                                   CONSUMER PROTECTION ACT,**
16  SHOPIFY (USA) INC.; SHOPIFY INC;            **47 U.S.C. § 227;**
    and DOES 1 through 10,                     **(2) COMMON LAW NEGLIGENCE;**
17                                             **(3) INVASION OF PRIVACY; AND**
                Defendants.                    **(4) UNLAWFUL INTRUSION**
18

19                                            **DEMAND FOR JURY TRIAL**

20

21

22

23

24

25

26

27

28

Plaintiff David Sheski ("Plaintiff"), individually and on behalf of all others similarly situated, complains of defendants Shopify (USA) Inc. and Shopify Inc. (collectively "Shopify" or "Defendants") as follows:

## SUMMARY OF THE CASE

1.     Plaintiff brings this action to stop Shopify's unlawful practice of making, facilitating, and participating in unauthorized text message marketing campaigns en masse to consumers' cellular telephones in violation of the Telephone Consumer Protection Act ("TCPA"), and to obtain redress for all persons injured by Shopify's conduct.

2.     Shopify is an e-commerce company that integrates with thousands of online retailers across the world, including many within this judicial district.  Shopify provides the infrastructure and software for online retailers to build their online presence, including their point-of-sale systems and specifically the tools to structure retailers' checkout webpages to collect consumers' personal identification information, including their cellular telephone numbers.  Shopify is actively involved in and participates directly in the creation, development, maintenance, management, and marketing of its retailers online businesses, Shopify provides ongoing business counseling, and Shopify takes a percentage of retailers' sales as compensation for the ongoing business counseling and marketing services it provides.

3.     As part of the suite of marketing tools Shopify provides, Shopify counsels retailers on best practices with respect to data collection and text message marketing, including the content and timing of text message marketing campaigns.  Shopify participates directly in the collection, storage, transfer, and use of consumer' cellular telephone numbers to send text message marketing advertisements through automatic telephone dialing systems.  Shopify is aware, based on its participation in the creation and maintenance of retailers' checkout pages, whether a particular retailer has obtained express written consent from a consumer to use the consumer's cellular telephone number for text message marketing campaigns, as required by the TCPA.  Specifically, there is an optional line-item a retailer can implement to obtain a consumer's express written consent to text marketing, but Shopify does not require retailers to use this line item and many or most of them do not.   Nonetheless, Shopify allows, facilitates, and participates in the

- 2 -

issuance of text message marketing campaigns even for retailers who do not utilize this line item – i.e., retailers whom Shopify knows have not obtained the express written consent required by the TCPA.  Shopify also deceptively advertises its text message marketing tools to retailers as fully TCPA complaint, when in fact they are not so, and only become TCPA compliant if a retailer takes extra measures not required by Shopify.  On information and belief, Shopify generates revenue from the processing of these text message marketing campaigns, either directly or indirectly through Shopify-approved apps in the Shopify app store, and also takes a percentage of retailers' sales generated from these text message marketing efforts.  These automated, unauthorized text message marketing ads violate the TCPA, as alleged in more detail herein.

4.    By effectuating these unauthorized, automated communications in violation of the TCPA, Defendants have caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies wireless spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such wireless spam, consumers waste time and energy reading and deleting such spam, the data used to receive and store these messages uses and wastes part of the finite storage space on a consumer's phone and adds to the likelihood that consumers' data speeds will be throttled by their provider, and the time expended on these activities reduces precious battery life of consumers' cellular telephones.

5.    In order to redress these injuries, Plaintiff, on behalf of himself and a class of similarly situated individuals, brings this suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., which prohibits unsolicited voice and text calls to cell phones.  Plaintiff also herein alleges tort claims for negligence, invasion of privacy and unlawful intrusion.  On behalf of the class, Plaintiff seeks an injunction requiring Defendants to cease all wireless spam activities and an award of statutory damages to the class members, together with treble damages, costs and reasonable attorneys' fees.

## **PARTIES**

6.    Plaintiff is a citizen and resident of the state of California.

7.    On information and belief, Defendant Shopify (USA) Inc. is a Delaware company

- 3 -

1    with its principal place of business in San Francisco, California, previously acquired and/or
2    created by Shopify Inc. and jointly responsible for the wrongful activities alleged herein with
3    respect to Shopify's conduct in the United States.

4           8.     On information and belief, Defendant Shopify Inc. is a Canadian company with its
5    principal place of business in Ontario, Canada, which previously acquired and/or created Shopify
6    (USA) Inc. and is jointly responsible for the wrongful activities alleged herein with respect to
7    Shopify's conduct in the United States.

8           9.     Plaintiff is unaware of the true names and capacities, whether individual,
9    association, partnership, corporation, other otherwise, of Does 1 through 10, and therefore sues
10   these defendants by these fictitious names. Each Doe defendant is the principal, agent, or
11   employee of the other and was acting within the scope of such agency or employment to commit
12   the acts alleged herein. Each Doe defendant sued herein aided and abetted the other with the
13   intent that each would be successful in their mutual endeavors. Each Doe defendant contributed
14   to Plaintiff's damages and the statutory violations alleged herein. Plaintiff will amend this
15   complaint to allege the Doe defendants' true names and capacities when they become known to
16   plaintiff.

17         10.    Plaintiff brings this action on behalf of himself, on behalf of the general public as a
18   Private Attorney General pursuant to California Code of Civil Procedure § 1021.5 and on behalf
19   of a class of similarly situated persons pursuant Federal Rule of Civil Procedure 23.

20                                   **JURISDICTION & VENUE**

21         11.    This Court has general personal jurisdiction over Shopify (USA) Inc. because, at
22   all relevant times, it has had systematic and continuous contacts with the State of California.
23   Defendant is registered to do business in California with the California Secretary of State and
24   maintains its headquarters in California. Furthermore, this Court has specific personal
25   jurisdiction over Shopify (USA) Inc. because the claims in this action all stem from its specific
26   contacts with the State of California — namely, its transmission of wireless spam via phone and
27   text to individuals located, among other places, in California.

28

- 4 -

12. This Court has general personal jurisdiction over Shopify Inc. because, at all relevant times, it has had systematic and continuous contacts with the State of California. This Court has specific personal jurisdiction over Shopify because the claims in this action all stem from its specific contacts with the State of California — namely, its transmission of wireless spam via phone and text to individuals located, among other places, in California.

13. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 in that it involves a federal question, namely whether Shopify violated the federal Telephone Consumer Protection Act, 47 U.S.C. § 227.

14. Venue is proper in the Northern District of California under 28 U.S.C. § 1391 (b)(1)-(2) in that defendant Shopify (USA) Inc. resides within this judicial district and because a substantial part of the events giving rise to the claims alleged herein occurred within this judicial district, specifically Defendants' en masse spam text marketing to consumers throughout the United States, including many within California and within this judicial district, and its business with thousands of online retailers, including many located within this judicial district.

## **FACTUAL BACKGROUND**

15. In recent years, as consumers have somewhat turned away from traditional media sources in favor of the internet and personal computing devices, it comes as no surprise that marketers are more frequently turning to alternative methods of capturing consumers' attention, such as, for example, by spamming their personal devices with unwanted promotional materials. There is a wide variety of federal and state legislation, however, governing the ways in which business may — and may not — invade individuals' personal space and property. As alleged herein, for example, the TCPA prohibits businesses from spamming consumers with text message marketing absent express written consent, in additional to prohibiting unsolited robocalls and faxes. Such unwanted text messages are especially harmful because consumers are generally charged by their service providers for call time and texts, waste minutes of the day reviewing, listening to, replying, cancelling and deleting useless communications, because spam text takes up part of the finite storage space of a consumer's cellular phone, because the data wasted by a spam text adds to the likelihood that a cellular provider will throttle consumers' data speed, and

1    because consumers' phones loose battery life faster by way of the time engaged in activities

2    related to such spam.

3                    **Shopify's Active Involvement in its Retailers' Businesses**

4              16.     Shopify is a global e-commerce company that integrates with thousands of

5    retailers across the world.  The company was founded in 2004 and is headquartered in Ottawa,

6    Ontario, Canada.  Shopify has reported that it has more than 800,000 retailer customers in

7    approximately 175 countries that use its ongoing business counseling and other e-commerce retail

8    products and services as of 2018, with a total gross merchandise volume exceeding $40 billion.

9    The company is traded publicly on the New York Stock Exchange under the symbol SHOP.

10             17.     Shopify is actively involved in helping its retailers design, set up, and manage their

11   stores across multiple sales channels, including mobile, web, social media, marketplaces, brick-

12   and-mortar locations, and pop up shows.  Shopify provides a host of software, products, tools,

13   and services that assist retailers in setting up their businesses.  Among other things, Shopify

14   provides its customers with a powerful back-office suite of services and products, ranging from

15   payment and point-of-sale systems to billing and shipping software, marketing tools, services,

16   business counseling, and other customer engagement tools and services.  In sum, Shopify assists,

17   advises, counsels, and is actively involved in the creation of an e-commerce space for retailers to

18   sell their goods online.

19             18.     Shopify's role does not end with the initial set up of its retailer's business,

20   however.  Rather, Shopify's role is ongoing, and Shopify continues to be actively involved in its

21   retailers' businesses both directly and indirectly.  Shopify is a monthly subscription plan.

22   Retailers can choose from one of three plans – Basic Shopify, Shopify, and Advanced Shopify.

23   Each plan is offered for a monthly price ranging from $29 to $299 per month.  As part of the

24   subscription services, each time a customer makes a purchase from a retailer using Shopify,

25   Shopify collects from the retailer a fee – 2% for the Basic Shopify plan, 1% for the Shopify plan,

26   and .5% for the Advanced Shopify plan.  All plans include the creation of an online store, 24/7

27   support from dedicated Shopify employees, ongoing business counseling services, shipping

28   services, and the creation of a point-of-sale software system, among other things.

19.     Shopify has more than 4,000 employees worldwide.  These employees in part act as consultants, experts, and advisers to Shopify retailers on a variety of subjects and topics. Shopify provides an online "Learning Center" that contains countless guides, tutorials, and handbooks on an array of business related topics.  Shopify also has an online "Shopify Academy" that provides free training and business education through online videos ranging in topics from Facebook advertising, GoogleAds, Search Engine Optimization, to Marketing and Sales strategies.  Shopify has a 24/7 call center that retailers can call at any time to discuss these topics, obtain advice and counseling, and troubleshoot technology issues.  Shopify recently expanded these services to include its first brick-and-mortar location in Los Angeles, where customers can come in and meet face to face with Shopify experts and consultants to serve their specific needs. Shopfiy's website provides countless tutorials, training materials, guides and videos specific to assist in marketing and sales strategies.  The Shopify App store, accessible by Shopify retailers through the main Shopify webpage, contains both Shopify-developed and Shopify-approved Apps that retailers can download and purchase for an additional cost.  These apps are approved and endorsed by Shopify, and are sometimes specifically developed by Shopify.  They are designed to be easily and seamlessly integrated into any Shopify web or mobile e-commerce system.

## Shopify's Role in Text Message Marketing Campaigns

20.     Although certain aspects of Shopify's role are customizable by the retailer, the structure and services Shopify provides are materially the same for all retailers as relevant to the allegations in this lawsuit.  Specifically, Shopify uses a standard template to begin the creation of the point-of-sale checkout procedure for each retailer, thus creating relative uniformity among its retailers' checkout procedures and data collection procedures.  As part of the online checkout procedure, Shopify provides a line item input field retailers can use to collect consumers' phone numbers.  Shopify also provides an optional line-item a retailer can implement to obtain a consumer's express written consent to text marketing, but Shopify does not require retailers to use this line item and many or most of them do not.

21.     On information and belief, Shopify itself stores the data collected, including the cellular phone numbers, as well as data on whether a retailer includes a TCPA-compliance box or

not, and data on whether a consumer has checked that box or not.  This, a retailer's TCPA compliance efforts are fully visible to Shopify through this data.

22.    As part of the suite of marketing tools Shopify provides, Shopify counsels retailers on best practices with respect to data collection and text message marketing, including the content and timing of test message marketing campaigns.  For example, Shopify retailers commonly structure their online check out procedures, on the advice of Shopify, to collect a consumer's cellular phone number before the consumer completes the transaction, so that if a consumer abandons the transaction the retailer and Shopify can shortly thereafter send the consumer a text message reminding them to complete the transaction.  This strategy is intended to boost sales and encourage customers to reconsider and complete previously abandoned purchases.

23.    Shopify is aware, based on its participation in the creation and maintenance of retailers' checkout pages, whether a particular retailer has obtained express written consent from a consumer to use the consumer's cellular telephone number for text message marketing campaigns, as required by the TCPA.  Nonetheless, Shopify allows, facilitates, and participates in the issuance of text message marketing campaigns even for retailers that Shopify knows or should know do not utilize this TCPA compliance line item.

24.    On information and belief, Shopify also deceptively advertises its text message marketing tools to retailers as fully TCPA complaint, when in fact they are not so, and only become TCPA compliant if a retailer takes extra measures not required by Shopify.  Shopify also deceptively allows, facilitates, and participates in the issuance of such text marketing campaigns even where a retailer's checkout page, built by Shopify, indicates the number will be used only for shipping updates.

25.    On information and belief, Shopify generates revenue from the processing of these text message marketing campaigns, either directly or indirectly through Shopify-approved apps in the Shopify app store, and also takes a percentage of retailers' sales generated from these text message marketing efforts.

26.    Shopify's common role in its retailers issuance of text message marketing campaigns is further evidenced by the fact that text advertisements sent on behalf of different

- 8 -

retailers often use the same SMS short code as the sender's identifier, indicating a common Shopify or Shopify-approved source.

27.    All of these text message advertisements are sent using automatic telephone dialing systems, and are in fact specifically advertised as such.

28.    In sum, Shopify does not obtain consumers' prior express written consent to text message advertisements prior to allowing, facilitating, and carrying out text message marketing campaigns.  Nor does Shopify require as part of its checkout procedure that retailers obtain consumers' prior express written consent to receive text advertisements, or require retailers to disclose that the phone numbers will be used for spam text advertisements.  Nonetheless, absent either disclosure or consent, Shopify initiates, facilitates, and carries out these spam text marketing campaigns on behalf of retailers, including by storing and transmitting the personal data of consumers necessary to send the texts.  Shopify is not only paid for doing so, but takes a cut of the revenue from the resulting sales as well, thus acting both as agent and principal with respect to text marketing campaigns.

29.    On information and belief, Defendants work together in concert on these marketing campaigns and are jointly responsible for the generation, operation, direction and transmission of SMS and text messaging marketing campaigns for all Shopify businesses.  These automated, unauthorized text message marketing ads violate the TCPA, as alleged in more detail herein.

**Plaintiff's Facts**

30.    For example, with respect to Plaintiff, on information and belief Shopify maintains, operates, directs and/or otherwise controls the website of the brand Masorini, at www.masorini.com, which is an online clothing store that has no physical locations.  At all times relevant to this lawsuit, the online checkout form on this website specifically brands it as a Shopify platform, labeling the online order form "Shopify Checkout."  The checkout form includes a line item input field for consumers to provide their telephone number.  That line item indicates the telephone number is "(For shipping updates)".   There is no line item check-box on the checkout page for consumers to click to indicate their prior express written consent to have

- 9 -

their phone number used for text advertisements.  Nor is there even any mention on the checkout form, or anywhere else on the website, that phone numbers will be used for spam text campaigns. Nonetheless, on information and belief, subsequent to a purchase on the website, Plaintiff received spam texts.

31.    For instance, on or about November 26, 2018, at approximately 3:06 p.m., Plaintiff received two text messages to his cell phone.  The first text message stated the following:

> Masorini: Hey David.  Cyber Monday!  30% OFF – Code: "CM30"  Shop here! [sic] - STOP 17908 to opt-out.

32.    At the same date and time, the second text message was identical and stated the following:

> Masorini: Hey David.  Cyber Monday!  30% OFF – Code: "CM30"  Shop here! [sic] - STOP 17908 to opt-out.

33.    On information and belief, it was Shopify that was responsible for the initiation and transmission of these text message advertisements to Plaintiff, on behalf of the retailer.  The spam texts were sent using the phone number collected via the Shopify checkout point-of-sale platform, that data was stored by Shopify and later transmitted by Shopify to send the marketing texts, and the unauthorized text advertisements were sent using Shopify's automated text marketing services, all without Plaintiff's prior express written consent.  The texts were, moreover, sent from the SMS short code number also used to send text message advertisements on behalf of other Shopify retailers.

34.    On information and belief, Shopify has likewise initiated spam text advertisements to thousands of consumers across the nation without their prior express written consent, using these same e-commerce point-of-sale and marketing systems experienced by Plaintiff.  These practices are part of a widespread automated mass texting and marketing campaign system operated by Defendants.

35.    On information and belief, when recipients of the above messages click links to websites in the text messages, Defendants and/or their agents present offers for Shopify's online businesses.

- 10 -

36.     At no time did Plaintiff provide prior express written consent to the receipt of the above-referenced calls or messages or any other such wireless spam message from Defendants, nor were any such spam texts, calls, or other messages within the scope of any established business relationship with Defendant.  To the contrary, the line item for entry of a phone number on the Masorini website indicated the number would be used solely for shipping updates, not future spam advertising.

37.     On information and belief, Defendants and their agents transmit text messages and/or calls en masse through automatic telephone dialing systems and/or equipment that has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers, and such a system was responsible for the November 26, 2018 text messages, and, on information and belief, other spam messages.

## **CLASS ACTION ALLEGATIONS**

38.     Plaintiff brings this action on behalf of himself and all other similarly situated persons pursuant to Federal Rule of Civil Procedure 23, including Rule 23(b)(1)-(3).  Plaintiff seeks to represent the class of persons defined as follows:

> All persons in the United States who received one or more unauthorized text message advertisement from, through, or on behalf of Shopify or Shopify businesses, within the applicable statute of limitations period.

39.     Plaintiff reserves the right to amend or modify the class description with greater particularity or further division into subclasses or limitation to particular issues.

40.     This action has been brought and may be maintained as a class action under Rule 23 because there is a well-defined community of interest in the litigation and the proposed class is ascertainable, as described further below:

A.      Numerosity: The potential members of the class as defined are so numerous that joinder of all members of the class is impracticable.  While the precise number of class members at issue has not been determined, Plaintiff believes that Defendants sent unauthorized spam text advertisements to thousands of individuals during the relevant time period

- 11 -

1   and on repeated occasions.

2   B.   Commonality: There are questions of law and fact common to Plaintiff and

3        the class that predominate over any questions affecting only the individual

4        members of the class.  The common questions of law and fact include, but

5        are not limited to, the following:

6        (1)   Whether, during the class period, Defendants engaged in a practice

7              using automatic calling devices to send mass transmissions of

8              unauthorized text message advertisements to individuals who did

9              not consent to receive such transmissions and/or which were

10             outside the scope of any established business relationship with

11             Defendants;

12       (2)   If so, whether this practice violated the TCPA;

13       (3)   Whether the class is entitled to damages for Defendants' unlawful

14             practices; and

15       (4)   The proper measure of civil penalties for Defendants' unlawful

16             practices;

17       (5)   Whether the class is entitled to treble damages based on the

18             willfulness of Defendants' conduct.

19  C.   Typicality.  The claims of the named Plaintiff are typical of the claims of

20       the class members.  Plaintiff and all other similarly situated individuals

21       sustained injuries and damages arising out of and caused by Defendants'

22       common course of conduct in violation of the TCPA, as alleged herein.

23  D.   Adequacy of Representation.  Plaintiff will fairly and adequately represent

24       the interests of the class.  Counsel who represent Plaintiff is experienced

25       and competent in consumer class actions, as well as various other types of

26       complex and class litigation.

27  E.   Superiority of Class Action.  A class action is superior to other available

28       means for the fair and efficient adjudication of this controversy.  Individual

- 12 -

1    joinder of all Plaintiffs is not practicable, and questions of law and fact

2    common to Plaintiffs predominate over any questions affecting only

3    Plaintiff.  Each Plaintiff has been damaged and is entitled to recovery by

4    reason of Defendants' illegal and unlawful spam marketing.  Class action

5    treatment will allow those similarly situated persons to litigate their claims

6    in the manner that is most efficient and economical for the parties and the

7    judicial system.   As any civil penalty awarded to any individual class

8    member may be small, the expense and burden of individual litigation

9    make it impracticable for most class members to seek redress individually.

10   It is also unlikely that any individual consumer would bring an action

11   solely on behalf of himself or herself pursuant to the TCPA.  Additionally,

12   the proper measure of civil penalties for each wrongful act will be

13   answered in a consistent and uniform manner.

14                    **FIRST CAUSE OF ACTION**

15        **(Violation of the TCPA, 27 U.S.C. § 227, Against All Defendants)**

16        41.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth

17   herein.

18        42.    Section 227 establishes the following restrictions on spam phone calls, text

19   messages, and faxes:

20        **(b)Restrictions on use of automated telephone equipment**
              **(1)Prohibitions**   It shall be unlawful for any person within the United

21        States, or any person outside the United States if the recipient is within the
          United States—

22                    (A) to make any call (other than a call made for emergency

23            purposes or made with the prior express consent of the called
              party) using any automatic telephone dialing system or an artificial

24            or prerecorded voice—

25                    …
                    (iii)to any telephone number assigned to a . . . cellular

26            telephone service . . . or any service for which the called
              party is charged for the call, unless such call is made solely

27            to collect a debt owed to or guaranteed by the United

28            States;

- 13 -

CLASS ACTION COMPLAINT

> (B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B);
>
> (C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . .

*See* 47 U.S.C. § 227 (b)(1)(A)(iii), (B), & (C).  The Federal Communications Commission and federal courts have construed the term "call" in the TCPA to include text messages.

43.    Defendants and their agents sent unsolicited commercial text messages advertisements to a list of wireless telephone numbers of Plaintiff and the other members of the Class using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers.

44.    These transmissions were made en masse without the prior express written consent of Plaintiff and the class and/or outside the scope of any prior established business relationship between Defendants and Plaintiff and class members.

45.    In the Federal Communications Commission's ("FCC") 2015 TCPA Omnibus Declaratory Ruling and Order adopted June 18, 2015, and released July 10, 2015, the FCC addressed TCPA liability where more than one person or entity is involved in the initiating of an unauthorized call or text.  *See* 2015 FCC TCPA Omnibus Declaratory Ruling at 20 ¶¶ 29-30, available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order.  The FCC noted that the term "initiate" in the TCPA suggests some "direct connection between a person or entity and the making of a call" and gave guidance on what that means:

> Specifically, a 'direct connection between a person or entity and the making of a call' can include 'tak[ing] the steps necessary to physically place a telephone call.'  It also can include being 'so involved in the placing of a specific telephone call' as to be deemed to have initiated it.  Thus, we look to the ***totality of the facts and circumstances*** surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA. . . Depending upon the facts of each situation, these and other factors, such as the extent to which a

- 14 -

person willfully enables fraudulent spoofing of telephone numbers . . . can be relevant in determining liability for TCPA violations.  Similarly, ***whether a person who offers a calling platform service for the use of others has knowingly allowed its client(s) to use that platform for unlawful purposes may also be a factor in determining whether the platform provider is so involved in placing the calls as to be deemed to have initiated them.***"

*Id.* ¶ 30 (emphasis added).  Numerous courts have applied the FCC's totality of the circumstances test and discussed its rationale for extending TCPA liability to more than one entity for the placing of an unauthorized text or call.  *See Cunningham v. Montes*, 378 F. SUpp. 3d 741 (W.D. Wisc. 2019) ("The 'totality of the circumstances' approach set out in the 2015 FCC Order will not provide easy answers in close cases.  But it makes one thing clear: a provider of auto-dialing services cannot blithely sit back and blame its customers for any TCPA violations that result from their use of his service…. TCPA liability attaches to those who control or are deeply involved in making specific calls, and to those who knowingly allow an auto-dialing system to be used to make prohibited robocalls"); *see Spiegel v. EngageTel Inc.*, 372 F. Supp. 3d 672, 683-85 (2019) (discussing FCC's order, the need to examine the totality of the circumstances, and rejecting defendant's argument on summary judgment that it was not liable because it did not place the call at issue); *see also Gomez v. Campbell–Ewald Co*., 768 F.3d 871, 873, 878–79 (9th Cir. 2014) (holding "a defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, defined by federal common law, between the defendant and a third-party caller").

46.     Here, as alleged in the general facts section above, Shopify is both deeply involved in the sending of the unauthorized text marketing campaigns at issue, and is knowingly allowing auto-dialing systems to be used to send prohibited texts.  Shopify actively counsels retailers on best practices with respect to data collection and text message marketing, including the content and timing of text message marketing campaigns.  Shopify participates directly in the collection, storage, transfer, and use of consumer' cellular telephone numbers to send text message marketing advertisements through automatic telephone dialing systems, either directly or through Shopify-developed or Shopify-approved apps.  Shopify is aware, based on its participation in the creation and maintenance of retailers' checkout pages, whether a particular retailer has obtained

1    express written consent from a consumer to use the consumer's cellular telephone number for text

2    message marketing campaigns, as required by the TCPA.  Specifically, there is an optional line-

3    item a retailer can implement to obtain a consumer's express written consent to text marketing,

4    but Shopify does not require retailers to use this line item and many or most of them do not.

5    Nonetheless, Shopify allows, facilitates, and participates in the issuance of text message

6    marketing campaigns even for retailers who do not utilize this line items – i.e., retailers whom

7    Shopify knows have not obtained the express written consent required by the TCPA.  Shopify

8    also deceptively advertises its text message marketing tools to retailers as fully TCPA complaint,

9    when in fact they are not so, and only become TCPA compliant if a retailer takes extra measures

10   not required by Shopify.  Shopify also spoofs the source of the its text message advertisements,

11   identify the source only via an SMS short code used by many Shopify retailers.  On information

12   and belief, Shopify generates revenue from the processing of these text message marketing

13   campaigns, either directly or indirectly through Shopify-approved apps in the Shopify app store,

14   and also takes a percentage of retailers' sales generated from these text message marketing

15   efforts.  Shopify is therefore both a principal and agent in the making of these unauthorized text

16   campaigns, in that it takes numerous steps necessary to the carrying out of the text marketing

17   campaigns, and has a vested, financial interest in both the texts themselves and the sales they

18   generate.  Based on the totality of these circumstances, Shopify is liable for all unauthorized texts

19   sent in violation of the TCPA, 47 U.S.C. § 227.

20          47.     As a result of Defendants' illegal conduct, the members of the Class suffered

21   actual damages and, under section 227(b)(3)(B), are each entitled to, inter alia, a minimum of

22   $500.00 in damages for each such violation of the TCPA.  Plaintiff and the Class suffered actual

23   harm in the form of invasion of privacy and disruption of their solitude and peace.  Consumers

24   also suffered actual harm not only because they were subjected to the aggravation that necessarily

25   accompanies wireless spam, but also because consumers frequently have to pay their cell phone

26   service providers for the receipt of such wireless spam, consumers waste time and energy reading

27   and deleting such spam, the data used to receive and store these messages uses and wastes part of

28   the finite storage space on a consumer's phone and adds to the likelihood that consumers' data

speeds will be throttled by their provider, and the time expended on these activities reduces precious battery life of consumers' cellular telephones.  Plaintiff and the Class found the unsolicited text message marketing harassing and intrusive.  In addition, Plaintiff suffered actual harm in that he is a medical doctor required to keep his phone on at all times due to potential medical emergencies, even when not at work or sleeping, and cannot simply ignore texts or calls from unknown numbers due to the nature of his profession; thus he found the unsolicited text marketing harassing and intrusive.  On information and belief, many or all class members similarly experience interference with their professional work and similarly found the unsolicited text marketing harassing and instrusive.

48.     Defendants' misconduct was willful and knowing, and the Court should, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiff and members of the Class.

**SECOND CAUSE OF ACTION**

**(Negligence -- By Plaintiffs Against All Defendants)**

49.     Plaintiff hereby incorporates each of the preceding paragraphs as if fully set forth herein.

50.     Defendants owed a duty of care to Plaintiff and the Class to reasonably protect their personal identification information, including their cellular telephone numbers and any other personal identification information in their possession, custody and/or control, and to reasonably inform them of Defendants' intended use of that information.  Defendants owed a duty to Plaintiff and the Class to act reasonably and with due care in obtaining, using and/or disseminating consumers' personal information, including but not limited to their cellular telephone numbers.

51.     Defendants negligently failed to take reasonable steps to protect Plaintiff's and the Class's personal identifying information from being used without Plaintiff's and the Class' knowledge or prior express written consent.

52.     On information and belief, Defendants also negligently failed to comply with third-party vendor rules, which require Defendants to have customers' prior express written

consent prior to sharing their personal identification information with the vendors, for example any third party marketing firms involved in text message campaigns.

53.     Defendants' conduct has caused Plaintiff and the Class to suffer damages by having their personal identification information accessed, stored, and disseminated without their knowledge or express consent, and because they have been placed at serious risk for harassment, fraud¸ and identity theft from anyone who has, or may obtain access to, their personal identification information.

54.     Plaintiff and the Class have been damaged by Defendants' negligent actions and failure to use reasonable care as alleged herein in an amount to be proven at trial.  On information and belief, Defendants received, and continues to receive substantial revenue from the unauthorized use Plaintiff's and the Class' personal identification information for unlawful text messaging activities.  This constitutes unjust enrichment for Defendants and must be disgorged, and restored to Plaintiff and the Class.

**THIRD CAUSE OF ACTION**

**(Invasion of Privacy -- By Plaintiffs Against All Defendants)**

55.     Plaintiff hereby incorporates each of the preceding paragraphs as if fully set forth herein.

56.     The constitutionally guaranteed right of privacy unequivocally includes the right to control the dissemination of one's private personal information, including one's cellular telephone number.

57.     Plaintiff and the Class have legally protectable privacy interests in their cellular telephone number, and their ability to control the disclosure and dissemination of this information.

58.     Defendants utilized Plaintiff and the Class' personal information without their prior express written consent and for unlawful purposes.

59.     Defendants' actions constitute a serious invasion of privacy in that Plaintiff and the Class have had their cellular telephone numbers accessed, shared, disseminated and/or sold to others without their knowledge or express consent.  In addition to the unwanted dissemination of

- 18 -

their private information, Plaintiff and the Class have been placed at serious risk of harassment, fraud and identity theft as a result of Defendants' conduct.

60.     Plaintiff and the Class have been damaged by Defendants' conduct in an amount to be proven at trial.  Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause Plaintiff and the Class great and irreparable injury in that their private personal information, including their cellular telephone numbers will remain at risk. Defendants will continue to use this unlawfully obtained information for their own purposes and profit, it will be sold, disseminated and/or disclosed to others, and it may be stolen and used for identity theft and credit card fraud.  Plaintiff and the Class have no adequate remedy at law for the injuries in that a judgment for the monetary damages will not end the invasion of privacy.

## FOURTH CAUSE OF ACTION

### (Unlawful Intrusion -- By Plaintiffs Against All Defendants)

61.     Plaintiff hereby incorporates each of the preceding paragraphs as if fully set forth herein.

62.     One who intentionally intrudes upon the solitude or seclusion of another or his private affairs or concerns is subject to liability for invasion of privacy.  The Supreme Court of California instructs that the tort of intrusion is not limited to physical invasions, but also lies where the defendant "obtained unwanted access to data about the plaintiff."

63.     Plaintiff and the Class had reasonable expectations that their personal identification information, including their private cellular telephone numbers would not be accessed, used and/or disseminated without their prior express consent.  They did not know that Defendants would use that information for unlawful purposes, or that this information would be stored and/or used for Defendants' profit, and/or sold, shared or disseminated to others without their express consent.

64.     The manner in which Defendants intruded upon Plaintiff's and the Class' privacy rights is highly offensive to a reasonable person.

65.     As a proximate result of the above acts, Plaintiff's and the Class' personal identification information was accessed, used and/or disseminated by Defendants for their own

- 19 -

profit, and to the detriment of Plaintiff and the Class, resulting in damages in the amount to be

proven at trial.  Unless and until enjoined, and restrained by order of this Court, Defendants'

wrongful conduct will continue to cause Plaintiff and the Class great and irreparable injury in that

their private personal information, including their cellular telephone numbers will remain at risk.

Defendants will continue to use this unlawfully obtained information for their own purposes and

profit, it will be sold, disseminated and/or disclosed to others.  Plaintiff and the Class have no

adequate remedy at law for the injuries in that a judgment for the monetary damages will not end

this unlawful intrusion.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for the following

relief:

1. An order certifying the Class as defined above;

2. An injunction requiring Defendants to cease all wireless spam activities;

3. Compensatory, consequential, actual, statutory damages and other damages according

     to proof;

4. Punitive and exemplary damages;

5. A declaration of rights and liabilities of the parties;

6. For distribution of any monies recovered on behalf of members of the Class or the

     general public via fluid recovery or *cy pres* recovery where necessary and as

     applicable to prevent Defendants from retaining the benefits of their wrongful

///

- 20 -

1      conduct.

2          7.  An award of reasonable attorneys' fees and costs; and

3          8.  Such further and other relief the Court deems reasonable and just.

4
       Dated: October 21, 2019                    WUCETICH & KOROVILAS LLP
5

6
                                          By:          /s/ Dimitrios V. Korovilas
7                                               DIMITRIOS V. KOROVILAS
                                               Attorneys for Plaintiff David Sheski,
8                                                 individually and on behalf of
                                                  all others similarly situated
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1          **<ins>PLAINTIFF'S DEMAND FOR JURY TRIAL</ins>**

2            Plaintiff, on behalf of himself and the putative class, hereby demands a trial by jury on all

3    issues of fact or law so triable.

5    Dated: October 21, 2019            WUCETICH & KOROVILAS LLP

7                        By:      /s/ Dimitrios V. Korovilas

8                             DIMITRIOS V. KOROVILAS
                            Attorneys for Plaintiff David Sheski,

9                             individually and on behalf of
                             all others similarly situated

- 22 -