1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MANATT, PHELPS & PHILLIPS, LLP**
CHRISTINE M. REILLY (Bar No. CA 226388)
JOHN W. MCGUINNESS (Bar No. CA 277322)
11355 W. Olympic Blvd.
Los Angeles, California  90064
Telephone:      310.312.4000
Facsimile:      310.312.4224

Attorneys for Defendants
SHOPIFY (USA) INC. AND SHOPIFY INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID SHESKI, individually and on behalf of
all others similarly situated,

                    Plaintiff,

          v.

SHOPIFY (USA) INC.; SHOPIFY INC; and
DOES 1 through 10,

                    Defendants.

No. 4:19-cv-06858-HSG

**DEFENDANTS SHOPIFY (USA) INC.'S
AND SHOPIFY INC.'S NOTICE OF
MOTION AND MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO
STRIKE CERTAIN ALLEGATIONS
FROM PLAINTIFF'S CLASS ACTION
COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES**

Date:         February 6, 2020
Time:         2:00 p.m.
Judge:       Haywood S. Gilliam, Jr.
Crtrm:        2, 4th Floor
Filed:         October 21, 2019

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

RELEVANT ALLEGATIONS ....................................................................................... 3

APPLICABLE LEGAL STANDARDS .......................................................................... 4

I.      FED. R. CIV. P. 12(B)(6): FAILURE TO STATE A CLAIM FOR RELIEF ................ 4

II.     FED. R. CIV. P. 12(F) AND 23: STRIKING IMPROPER ALLEGATIONS ................ 5

ARGUMENT .................................................................................................................. 6

I.      PLAINTIFF FAILS TO STATE A TCPA CLAIM UNDER RULE 12(B)(6) ................ 6

        A.      The Complaint Fails to Allege Defendants Placed the Texts at Issue. ................. 6

        B.      The Complaint Fails to Plead Facts that Defendants Were "So Involved" in
                Sending the Texts At Issue That They Should Be Deemed to Have Sent
                Them For Direct TCPA Liability Purposes. ......................................................... 10

        C.      Plaintiff Has Failed to State a Claim for Vicarious TCPA Liability ..................... 14

        D.      Plaintiff Fails to Plead Facts Supporting His Conclusions About ATDS
                Use. ................................................................................................................... 16

II.     PLAINTIFF FAILS TO PLEAD ANY PLAUSIBLE COMMON LAW CLAIMS ........ 18

        A.      Plaintiff Fails to Plead Vicarious Liability Under State Law (Counts II –
                IV). ..................................................................................................................... 18

        B.      Plaintiff Fails to State a Claim for Common Law Negligence (Count II). ............ 18

        C.      The Complaint Fails to State Claims for "Invasion of Privacy" or
                "Unlawful Intrusion" (Counts III and IV) ............................................................ 19

III.    ALTERNATIVELY, PLAINTIFF'S FAULTY CLASS AND OTHER
        ALLEGATIONS SHOULD BE STRICKEN UNDER FED. R. CIV. P. 12(F)
        AND 23. .............................................................................................................. 21

        A.      Common Issues of Law and Fact Do Not Predominate. ...................................... 21

        B.      Plaintiff's Proposed Class Definition Is Also Impermissibly "Fail-Safe". ........... 23

        C.      Plaintiff Seeks Damages That are Unrecoverable As a Matter of Law and
                Therefore Those Allegations Should Be Stricken Under Rule 12(f). .................... 25

CONCLUSION ............................................................................................................... 25

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- i -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

**TABLE OF AUTHORITIES**

Page

**CASES**

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
  2018 WL 288055 (N.D. Cal. Jan. 4, 2018) ........................................7, 15

*Alan v. BrandRep, Inc.*,
  2016 WL 10988679 (C.D. Cal. Nov. 28, 2016)..............................24

*Alim v. Superior Court*,
  185 Cal. App. 3d 144 (1986)..............................................20

*American Western Door & Trim v. Arch Specialty Ins. Co.*,
  2015 WL 1266787 (C.D. Cal. Mar. 18, 2015) ..........................6

*Armstrong v. Investor's Bus. Daily, Inc.*,
  2018 WL 6787049 (C.D. Cal. Dec. 21, 2018) ........................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................5

*Berger v. Home Depot USA, Inc.*,
  741 F.3d 1061 (9th Cir. 2014) (*abrogated on other grounds by Microsoft v.
  Baker*, 137 S. Ct. 1702 (2017))..........................................21

*Bowoto v. Chevron Corp.*,
  2007 WL 2349338 (N.D. Cal. Aug. 14, 2007)......................6, 25

*Bridge v. Credit One Fin.*,
  294 F. Supp. 3d 1019, 1032-33 (D. Nev. 2018)....................22

*Brown v. USA Taekwondo*,
  40 Cal. App. 5th 1077, 1091 (2019) ..................................18

*Bureerong v. Uvawas*,
  922 F. Supp. 1450 (C.D. Cal. 1996)......................................6

*Canary v. Youngevity Int'l, Inc.*,
  2019 WL 1275343 (N.D. Cal. Mar. 20, 2019).................5, 9, 15

*Chang v. Rockridge Manor Condo.*,
  2008 WL 413741 (N.D. Cal. Feb. 13, 2008), *aff'd*, 344 F.App'x 365
  (9th Cir. 2009)..................................................................13

*Childress v. Liberty Mut. Ins. Co.*,
  2018 WL 4684209 (D.N.M. Sept. 28, 2018) ....................7, 9, 15

*Corales v. Bennett*,
  567 F.3d 554 (9th Cir. 2009)..............................................18

*Cour v. Life360, Inc.*,
  2016 WL 4039279 (N.D. Cal. July 28, 2016)........................11

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- ii -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

**TABLE OF AUTHORITIES**
(Continued)

Page

*Croucier v. Chavos*,
207 Cal. App. 4th 1138 (2012) ..................................................................19

*Deteresa v. Am. Broad. Cos., Inc.*,
121 F.3d 460 (9th Cir. 1997) .....................................................................21

*Dixon v. Monterey Fin. Servs., Inc.*,
2016 WL 4426908 (N.D. Cal. Aug. 22, 2016) ..........................................24

*Ewing v. GoNow Travel Club, LLC*,
2019 WL 3253058 (S.D. Cal. July 19, 2019) ...........................................17

*Flores v. City of Cal. City*,
2019 WL 1934016 (E.D. Cal. May 1, 2019) ................................................6

*Flynn v. DIRECTV, LLC*,
2016 WL 4467885 (D. Conn. Aug. 23, 2016) ...........................................23

*Frank v. Cannabis & Glass, LLC*,
2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) ..................................... passim

*Freidman v. Massage Envy Franchising, LCC*,
2013 WL 3026641 (S.D. Cal. June 13, 2013) .......................................15, 16

*Gene and Gene LLC v. BioPay LLC*,
541 F.3d 318 (5th Cir. 2008) ....................................................................23

*Gulden v. Consol. World Travel Inc.*,
2017 WL 3841491 (D. Ariz. Feb. 15, 2017) .............................................16

*Hanni v. Am. Airlines, Inc.*,
2010 WL 289297 (N.D. Cal. Jan. 15, 2010) .............................................24

*Hernandez v. Select Portfolio, Inc.*,
2015 WL 3914741 (C.D. Cal. June 25, 2015) ...........................................16

*Herrera v. CarMax Auto Superstores California, LLC*,
2014 WL 3398363 (C.D. Cal. July 2, 2014) ................................................4

*Herskowitz v. Apple, Inc.*,
301 F.R.D. 460 (N.D. Cal. 2014) ...............................................................21

*Highfields Capital Mgmt., L.P. v. Doe*,
385 F. Supp. 2d 969 (N.D. Cal. 2005) .......................................................14

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal.4th 1 (1994) .....................................................................................21

*Hurley v. Messer*,
2018 WL 4854082 (S.D.W.Va. Oct. 4, 2018) ..........................................8, 9

*In the Matter of the Joint Petition
filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013) ..............................9

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- iii -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

## TABLE OF AUTHORITIES
(Continued)

Page

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008).................................................................................5, 9, 12

*In re Stac Elecs. Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996)..........................................................................................4

*Jones v. Royal Admin. Servs., Inc.*,
   866 F.3d 1100 (9th Cir. 2017).......................................................................................14

*Jones v. Royal Admin. Servs., Inc.*,
   887 F.3d 443 (9th Cir. 2018)...........................................................................14, 15, 16

*Kamar v. Radioshack Corp.*,
   375 F.App'x 734 (9th Cir. 2010) ...................................................................................24

*Katz v. Am. Honda Motor Co.*,
   2017 WL 3084272 (C.D. Cal. Jun. 29, 2017) ...............................................................23

*Kauffman v. CallFire, Inc.*,
   141 F. Supp. 3d 1044, 1050 (S.D. Cal. 2015)...............................................................12

*Kristensen v. Credit Payment Servs. Inc.*,
   2015 WL 4477425 (D. Nev. July 20, 2015), *aff'd*, 879 F.3d 1010
   (9th Cir. 2018).................................................................................................................15

*Langan v. United Svcs. Auto. Assoc.*,
   69 F. Supp. 3d 965, 988-89 (N.D. Cal. 2014) .................................................................6

*Lewis v. Superior Court*,
   30 Cal. App. 4th 1850 (1994), *as modified on denial of reh'g* (Dec. 29, 1994) .......................18

*Lucas v. Telemarketer Calling from (407) 476-5680*,
   2019 WL 3021233 (6th Cir. May 29, 2019) ...............................................................7, 15

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008)..........................................................................................5

*Mardirosian v. Nationwide Credit, Inc.*,
   2012 WL 13035476 (C.D. Cal. Oct. 10, 2012) ...........................................................19

*Marich v. MGM/UA Telecomm.*,
   Inc., 113 Cal. App. 4th 415, 421 (2003)........................................................................20

*Marseglia v. JP Morgan Chase Bank*,
   750 F. Supp. 2d 1171 (S.D. Cal. 2010)..........................................................................21

*McGarry v. Sax*,
   158 Cal. App. 4th 983 (2008) .......................................................................................18

*McKenna v. WhisperText*,
   2015 WL 5264750 (N.D. Cal. Sept. 9, 2015) ...............................................................11

*Meeks v. Buffalo Wild Wings, Inc.*,
   2018 WL 1524067 (N.D. Cal. Mar. 28, 2018)......................................................... passim

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- iv -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

# TABLE OF AUTHORITIES
(Continued)

Page

*Menzel v. Scholastic, Inc.*,
   2018 WL 1400386 (N.D. Cal. Mar. 19, 2018)......................................................9, 13

*Meyer v. Portfolio Recovery Assocs., LLC*,
   707 F.3d 1036 (9th Cir. 2012).......................................................................7

*Myers v. Trendwest Resorts, Inc.*,
   148 Cal. App. 4th 1403 (2007) ....................................................................18

*Naiman v. Freedom Forever, LLC*,
   2019 WL 1790471 (N.D. Cal. Apr. 24, 2019) ............................................. passim

*Naiman v. TranzVia LLC*,
   2017 WL 5992123 (N.D. Cal. Dec. 4, 2017) .............................................. passim

*Newhart v. Quicken Loans Inc.*,
   2016 WL 7118998 (S.D. Fla. Oct. 12, 2016).................................................22

*Padron v. Lara*,
   2018 WL 2213462 (E.D. Cal. May 11, 2018), *aff'd sub nom. Padron v. City of
   Parlier*, 776 F.App'x 453 (9th Cir. 2019) ...................................................20

*Panacci v. A1 Solar Power, Inc.*,
   2015 WL 3750112 (N.D. Cal. June 15, 2015) ...............................................15

*Pareto v. FDIC*,
   139 F.3d 696 (9th Cir. 1998)...............................................................5, 9, 12

*Pascal v. Agentra, LLC*,
   2019 WL 5212961 (N.D. Cal. Oct. 16, 2019)......................................5, 7, 14, 15

*Pepka v. Kohl's Dep't Stores, Inc.*,
   2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) ......................................6, 21, 24

*Priester v. eDegreeAdvisor, LLC*,
   2017 WL 4237008 (N.D. Cal. Sept. 25, 2017) .....................................5, 16, 17

*Prince v. Out Pub. Inc.*,
   2002 WL 7999 (Cal. Ct. App. Jan. 3, 2002) .................................................20

*Reddy v. Litton Indus., Inc.*,
   912 F.2d 291 (9th Cir. 1990)....................................................................25

*Regents of Univ. of Calif. v. Superior Court*,
   4 Cal.5th 607, 618 (2018) .......................................................................19

*Reichman v. Poshmark, Inc.*,
   2017 WL 2104273 (S.D. Cal. May 15, 2017).................................................11

*Revitch v. Citibank*,
   2019 WL 1903247 (N.D. Cal. Apr. 28, 2019) ...............................................23

*S. Pac. Transp. Co. v. State of Calif.*
   115 Cal. App. 3d 116 (Ct. App. 1981) ........................................................25

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- v -

**TABLE OF AUTHORITIES**
(Continued)

Page

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ........................................................................6

*Satterfield v. Simon & Schuster, Inc.*,
   569 F.3d 946 (9th Cir. 2009) ....................................................................................7

*Schreck v. NCO Fin. Sys., Inc.*,
   2014 WL 12656617 (N.D. Ga. Aug. 15, 2014) ........................................................25

*Scotten v. First Horizon Home Loan Corp.*,
   2012 WL 3277104 (E.D. Cal. Aug. 9, 2012) ......................................2, 18, 19, 20

*Sepehry-Fard v. Dep't Stores Nat'l Bank*,
   15 F. Supp. 3d 984, 987-88 (N.D. Cal. 2014), *aff'd in part,* 670 F.App'x 573
   (9th Cir. 2016) ......................................................................................................8, 9

*Short v. New Penn Fin., LLC*,
   2019 WL 1552860 (Cal. Ct. App. Apr. 10, 2019) ...................................................25

*Shulman v. Group W Prods., Inc.*,
   18 Cal. 4th 200 (1998) ...........................................................................................20

*Sidney-Vinstein v. A.H. Robins Co.*,
   697 F.2d 880 (9th Cir. 1983) ...................................................................................6

*SmileCare Dental Grp. v. Delta Dental Plan of Cal.*,
   88 F.3d 780 (9th Cir. 1996) ......................................................................................5

*Smith v. Maryland*,
   442 U.S. 735 .............................................................................................................20

*Smith v. Microsoft Corp.*,
   297 F.R.D. 464 (S.D. Cal. 2014) ...........................................................................25

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ..........................................................................5, 9, 12

*Stark v. Stall*,
   2019 WL 3718878 (S.D. Cal. Aug. 7, 2019) ..........................................................15

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ........................................................................5, 9, 12

*Stokes v. CitiMortgage, Inc.*,
   2015 WL 709201 (C.D. Cal Jan. 16, 2015) .......................................................6, 21

*Taus v. Loftus*,
   40 Cal. 4th 683 (2007) ...........................................................................................20

*Thomas v. Taco Bell Corp.*,
   879 F. Supp. 2d 1079 (C.D. Cal. 2012), *aff'd,* 582 F.App'x 678 (9th Cir. 2014)...................15

*Trenz v. On-Line Adm'rs, Inc.*,
   2017 WL 3084158 (C.D. Cal. Apr. 26, 2017) ........................................................22

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

# TABLE OF AUTHORITIES
(Continued)

**Page**

*Vessal v. Alarm.com,*
  2017 WL 4682736 (N.D. Ill. Oct. 18, 2017)................................................7

*Warciak v. Subway Restaurants, Inc.,*
  2019 WL 978666 (N.D. Ill. Feb. 28, 2019) ..............................................7

*Weisberg v. Stripe, Inc.,*
  2016 WL 3971296 (N.D. Cal. July 25, 2016)..........................................17

*Weisbuch v. Cnty. of L.A.,*
  119 F.3d 778 (9th Cir. 1997)....................................................................8

*Whittlestone, Inc. v. Handi–Craft Co.,*
  618 F.3d 970 (9th Cir. 2010)....................................................................6

*Yagman v. Allianz Ins.,*
  2015 WL 5553460 (C.D. Cal. May 11, 2015) ..........................................6

## STATUTES

47 U.S.C. § 227(a)(1)................................................................................17

47 U.S.C. § 227(b)(1)..................................................................................7

47 U.S.C. § 227(b)(1)(A)(iii)......................................................................7

47 U.S.C. § 227(b)(1)(B)............................................................................7

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(a)(1)...........................................................................7

47 C.F.R. § 64.1200(a)(2)...........................................................................7

47 C.F.R. § 64.1200(f)(1).........................................................................24

https://www.shopify.com/faq (last visited Dec. 23, 2019) ...........................4

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
  Protection Act of 1991,*
  30 FCC Rcd. 7961 (Jul. 10, 2015) .................................................. passim

## RULES

Fed. R. Civ. P. 9(b) ...................................................................................14

Fed. R. Civ. P. 12(b)(6) .................................................................... passim

Fed. R. Civ. P. 12(f) ......................................................................... passim

Fed. R. Civ. P. 23 ............................................................................. passim

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- vii -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT on February 6, 2020, at 2:00 p.m.**, or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Haywood S. Gilliam, Jr., located in Courtroom 2, 4th Floor, United States Courthouse, 1301 Clay Street, Oakland, CA 94612, Defendants Shopify (USA) Inc. ("Shopify USA") and Shopify Inc. ("Shopify Inc.")[1] will and hereby do move this Court for dismissal of the Class Action Complaint (*see* Dkt. 1, "Complaint" or "Compl.") filed by Plaintiff David Sheski ("Plaintiff") in this matter, in its entirety and with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, or in the alternative, to strike the class-related allegations from, as well as certain relief sought in, the Complaint pursuant to Fed. R. Civ. P. 12(f) and 23.  Defendants' Motion seeks an order dismissing the Complaint under Rule 12(b)(6) for failure to state a claim because Plaintiff has failed to plead facts supporting a plausible claim against either of the Defendants under the Telephone Consumer Protection Act ("TCPA") or California common law.  However, should the Court decide not to dismiss the Complaint in whole or in part, Defendants also seek, in the alternative, an order pursuant to Rules 12(f) and 23 striking Plaintiff's (i) class definitions and other class allegations, which are so facially improper and inadequate that certification cannot be granted, and (ii) requests for attorneys' fees and punitive and exemplary damages, which are not recoverable as a matter of law.  This Motion is based on this Notice of Motion and Motion, the incorporated Memorandum of Points and Authorities below, all papers on file herein, all matters subject to judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to ruling.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff's Complaint conclusorily and inconsistently asserts that Defendants violated the TCPA and common law in relation to two text messages.  But Plaintiff readily concedes that: (i) the two text messages that he purportedly received on his cell phone were *sent by a third-party*—*i.e.*, Masorini, an online clothing retailer—and *not Defendants*; (ii) "Shopify" is not a telemarketer but

---

[1] Where applicable and for convenience purposes only, Shopify USA and Shopify Inc. are at times referred to herein collectively as "Defendants."  By doing so, however, Shopify USA and Shopify Inc. do not concede that they are properly conflated, or that the alleged conduct or omissions of one can or should properly be imputed to the other for liability purposes in this action.

rather a general e-commerce "platform" provider for third-party retailers, allowing those retailers to offer their goods and services through the internet on their own online stores built and customized via the Shopify platform; and (iii) Masorini is one of thousands of such retailers.  At base, the Complaint conclusorily asserts that Defendants somehow are responsible for and are keenly aware of the conduct of each of Defendants' 800,000+ retailers worldwide who use the Shopify platform, like Masorini, but without providing any allegations sufficient under federal pleading standards demonstrating that Defendants can be or are responsible for the conduct of those third parties.  In any event, merely regurgitating the legal elements of a cause of action without alleging sufficient supporting facts, which is all Plaintiff has done here, does not satisfy federal pleadings standards. As such, the Complaint should be dismissed in its entirety for at least the following reasons:

**First**, the Complaint should be dismissed for failure to state a claim under Rule 12(b)(6) because Plaintiff fails to allege facts to support his TCPA and common law claims.  To begin, Plaintiff fails to plead sufficient facts supporting his conclusory allegations that either of the Defendants: (i) physically sent the texts at issue, were so deeply "involved" to be deemed to have sent them, or "knowingly" allowed others to use their e-commerce platform for unlawful purposes, as required for direct TCPA liability; or (ii) had an agency relationship with or control over Masorini or any other responsible third parties who did, as required for vicarious TCPA liability.

**Second**, the Complaint is devoid of any facts supporting Plaintiff's conclusions that the at-issue texts were sent using an "automatic telephone dialing system" ("ATDS") in violation of the TCPA.  Instead, the allegations merely parrot the statutory definition of an ATDS and show *targeted* messaging, which is plainly inconsistent with ATDS use.  Such contradictory allegations are inherently implausible and, thus, are also insufficient to survive dismissal under Rule 12(b)(6).

**Third**, Plaintiff also fails to plead facts supporting critical elements of his three common law claims.  For example, Plaintiff fails to plead any facts that Defendants owed any duty of care to Plaintiff as Masorini's customer, that they breached such a duty, or that he suffered actual damages as required to state a common law negligence claim.  Further, Plaintiff's "invasion of privacy" and "unlawful intrusion" claims are belied by the fact that he *voluntarily* provided his number to Masorini in connection with a purchase he made from that retailer and it was not shared by

1    Defendants, much less in a "highly offensive" manner as is required to plausibly state such claims.

2    Finally, while the entire Complaint is ripe for dismissal on multiple grounds for the reasons

3    above, the class allegations are also so facially improper and inadequate that class certification

4    cannot be granted as pleaded.  Thus, they should be stricken at the pleadings stage pursuant to Rules

5    12(f) and 23 before the parties and the Court needlessly waste time and effort in discovery.  Plaintiff

6    also seeks, *inter alia*, attorneys' fees and punitive and exemplary damages in his Prayer for Relief,

7    none of which are recoverable as a matter of law and, thus, should also be stricken under Rule 12(f).

8    ## RELEVANT ALLEGATIONS

9    Despite 65 paragraphs of hyperbole and mostly non-binding legal citations, the Complaint is

10   long on speculation and conclusions but short on allegations of supporting facts and, thus, it fails to

11   meet federal pleading standards.  At best, and in pertinent part, the Complaint alleges the following:

12   According to Plaintiff, "Shopify" (a term that he ambiguously and improperly defines to

13   include both Defendants) "is an *e-commerce company* that integrates with thousands of online

14   retailers across the world" that "provides the *infrastructure and software for [those] online retailers*

15   *to build their online presence*, including their point-of-sale systems" and online "check out" pages,

16   through "a suite of marketing tools" (*i.e.*, software applications or "apps"), which are only

17   "sometimes developed by Shopify" and that are available for "download" in the "Shopify App store"

18   and "accessible by Shopify retailers through the main Shopify webpage…." Compl. ¶¶ 2, 3, 16, 17,

19   19 (emphasis added).  Put another way, Defendants are not telemarketers but rather provide an

20   electronic "*checkout point-of-sale platform*" allegedly used by "*more than 800,000* [third party]

21   retail customers in approximately 175 countries" to *build, customize, and operate their own online*

22   *stores*.  *Id*. ¶¶ 2, 16, 17, 20, 30, 33 (emphasis added).  But, as further discussed below, Plaintiff does

23   not allege any facts that: (i) Defendants physically sent him any texts, as opposed to being only a

24   platform provider for retailers; (ii) any of the text messages at-issue mentioned or identified

25   Defendants; or (iii) those text messages were sent on Defendants' behalf.  In sum, Plaintiff does not

26   allege any meaningful, legally significant nexus between the at-issue text messages and Defendants.

27   In fact, as Plaintiff admits, Defendants themselves do not provide "automated text

28   marketing services" to retailers or send any text messages on behalf of the Shopify platform users,

Manatt, Phelps &
Phillips, LLP
Attorneys at Law
Los Angeles

- 3 -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

nor to anyone else.  *See* Compl. ¶¶ 3, 33.  Rather, as the "main Shopify webpage" confirms (*id.* ¶ 19), Shopify.com is simply an e-commerce software "platform that lets [third party retailers] start, grow, and manage [their own] business" and "[c]reate and customize an online store."[2]

Nevertheless, Plaintiff alleges that, at some unspecified point, he provided his cell phone number to an online clothing retailer, Masorini, in connection with a purchase he made on that retailer's website for the purpose of receiving shipping updates from that retailer.  *See* Compl. ¶¶ 30, 36.  Subsequently, Plaintiff allegedly received two identical text messages at the same time, originating from "Masorini" and addressed to "David" (which is Plaintiff's first name), and offering him a coupon.  *Id.* ¶¶ 31-32.  These two messages form the sole basis for Plaintiff's claims here.

Despite the foregoing, and despite acknowledging that Defendants simply provide an e-commerce platform for third party retailers like Masorini to use to build and customize their own online stores, Plaintiff concludes that "it was ***Shopify*** that was responsible for the initiation and transmission of these text message advertisements to Plaintiff, on behalf of" Masorini.  *Id.* ¶ 33 (emphasis added).  Plaintiff also absurdly concludes without any supporting facts that Defendants not only somehow acted "***both as agent and principal*** with respect to text marketing campaigns" conducted by the "more than 800,000" third-party retailers worldwide who use the Shopify platform, but also that Defendants somehow have direct involvement in and knowledge of the marketing campaigns of each of those 800,000+ retailers.  *Id.* ¶¶ 1-4, 19, 22-24, 28-29, 33-34, 37, 43, 46 (emphasis added).  Plaintiff likewise implausibly concludes that Defendants acquired, possessed, and/or disseminated his cell number to other third parties, even though he solely alleges that he provided his number to and received two texts from Masorini only.  *Id.* ¶¶ 30-32, 59-63.

## APPLICABLE LEGAL STANDARDS

## I.   FED. R. CIV. P. 12(B)(6): FAILURE TO STATE A CLAIM FOR RELIEF

Under Rule 12(b)(6), "a court may dismiss a complaint as a matter of law for (1) lack of

---

[2] *See* https://www.shopify.com/faq (last visited Dec. 23, 2019).  Judicial notice of the Shopify website is proper here.  *See, e.g., In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405, n.4 (9th Cir. 1996) ("'[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.'"); *Herrera v. CarMax Auto Superstores California, LLC*, 2014 WL 3398363, at *2 (C.D. Cal. July 2, 2014) (For Rule 12(b)(6) purposes, "[i]t is not uncommon for courts to take judicial notice of factual information found on the World Wide Web.").

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996). A legal claim mandates pleading sufficient facts. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). A "bare assertion" and "conclusory allegations" will not suffice, and the allegations "must be enough to raise a right to relief above the speculative level." *Id.* A "formulaic recitation of the elements" of a claim is likewise insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). *See also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (Complaints "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Moreover, for Rule 12(b)(6) purposes, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the Court need <u>not</u> "'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). *See also Naiman v. TranzVia LLC*, 2017 WL 5992123, at *11 (N.D. Cal. Dec. 4, 2017) ("A plaintiff must allege facts, not conclusions, and the court need not accept as true … conclusory allegations cast in the form of factual allegations.") (citing *Sprewell*); *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998) ("conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."). As further discussed below, Ninth Circuit courts, including in this District, have routinely dismissed TCPA cases where, as here, plaintiffs have failed to meet the foregoing pleading requirements. *See, e.g.*, *Canary v. Youngevity Int'l, Inc.*, 2019 WL 1275343, at *1–9 (N.D. Cal. Mar. 20, 2019); *Naiman v. Freedom Forever, LLC*, 2019 WL 1790471, at *3 (N.D. Cal. Apr. 24, 2019); *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2-5 (N.D. Cal. Oct. 16, 2019); *Priester v. eDegreeAdvisor, LLC*, 2017 WL 4237008, at *2 (N.D. Cal. Sept. 25, 2017).

## II.      FED. R. CIV. P. 12(F) AND 23: STRIKING IMPROPER ALLEGATIONS

A court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In this regard, it is well settled in the Ninth Circuit that class allegations may be properly stricken at the pleadings stage prior to discovery pursuant to

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

1   Rule 12(f) where, as here, "the allegations make it obvious that classwide relief is not available"

2   under Rule 23. *American Western Door & Trim v. Arch Specialty Ins. Co.*, 2015 WL 1266787, at

3   *8 (C.D. Cal. Mar. 18, 2015). *See also Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990-91 (N.D.

4   Cal. 2009) (striking class allegations as "impertinent" under Rule 12(f) for not satisfying Rule

5   23); *Stokes v. CitiMortgage, Inc.*, 2015 WL 709201, at *4-6 (C.D. Cal Jan. 16, 2015) (striking

6   class allegations with prejudice that "require[d] individualized inquiries into each putative class

7   member"); *Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at *1-5 (C.D. Cal. Dec. 21,

8   2016) (striking class allegations in a TCPA case which "necessarily involve[d] individualized

9   inquiries" and for being "an impermissible fail-safe class"); *Langan v. United Svcs. Auto. Assoc.*,

10  69 F. Supp. 3d 965, 988-89 (N.D. Cal. 2014) (striking class allegations where "discovery on the

11  class claims would not shed any additional light" on whether plaintiff would satisfy Rule 23).

12      Moreover, Rule 12(f) motions serve to "to avoid the expenditure of time and money that

13  must arise from litigating spurious issues." *Flores v. City of Cal. City*, 2019 WL 1934016, at *3

14  (E.D. Cal. May 1, 2019) (quoting *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir.

15  1983)).  Thus, courts have recognized that permitting a facially uncertifiable class to proceed to

16  discovery, as is true in this case, would place an undue burden and expense upon the parties and

17  the Court. *See, e.g., Yagman v. Allianz Ins.*, 2015 WL 5553460, at *4 (C.D. Cal. May 11, 2015)

18  (striking class allegations where allowing untenable class claims to proceed past the pleadings

19  stage "would inject significant uncertainty as to the scope of discovery and other pre-trial

20  proceedings") (citing *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

21      Finally, it is also well-accepted that district courts may strike under Rule 12(f) at the

22  pleadings stage "any part of the prayer for relief when the damages sought are not recoverable as a

23  matter of law." *See, e.g., Bowoto v. Chevron Corp.*, 2007 WL 2349338, at *2 (N.D. Cal. Aug. 14,

24  2007) (quoting *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 n. 34 (C.D. Cal. 1996)).

25                    **ARGUMENT**

26  I.    **PLAINTIFF FAILS TO STATE A TCPA CLAIM UNDER RULE 12(B)(6).**

27        A.    **The Complaint Fails to Allege Defendants Placed the Texts at Issue.**

28  In pertinent part, the TCPA provides that no person shall "make any call (other than a call

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

made for emergency purposes or made with the prior express consent of the called party) using any [ATDS] or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii).  This is strictly a text message case given that Plaintiff does not allege that he received a call with an "artificial or prerecorded voice."  Therefore, to successfully state a TCPA claim and avoid dismissal here, Plaintiff must plausibly allege with supporting facts that "(1) the defendant called [or, in this case, sent a text message to] a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent."  *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)); *see also* 47 C.F.R. § 64.1200(a)(1) & (2); *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 951-52 (9th Cir. 2009) (texts are "calls" under the TCPA).  Moreover, it is well established that, "[f]or a person to 'make' a call under the TCPA, the person must either (1) ***directly make*** the call, or (2) have an ***agency relationship*** with the person who made the call." *Pascal*, 2019 WL 5212961, at *2 (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc*., 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)) (emphasis added).  As shown below, Plaintiff's Complaint fails to allege any, let alone sufficient, facts supporting any of these necessary elements.

To begin, traditionally only the person or entity who takes the steps necessary to ***physically*** place a call (or, here, a text message) "makes" or "initiates" that call or text within the meaning of the TCPA and can be subject to direct TCPA liability.  *See, e.g., Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019); *Lucas v. Telemarketer Calling from (407) 476-5680*, 2019 WL 3021233, at *4–6 (6th Cir. May 29, 2019); *Warciak v. Subway Restaurants, Inc.*, 2019 WL 978666, at *2 (N.D. Ill. Feb. 28, 2019); *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018); *Vessal v. Alarm.com*, 2017 WL 4682736, at *2 (N.D. Ill. Oct. 18, 2017).  Thus, federal courts routinely reject direct TCPA liability claims, like Plaintiff's, lacking sufficient facts regarding the defendant's initiation of the calls or texts.  *See, e.g., id.*[3]

---

[3] While the TCPA's cell phone provision states "make any call" whereas the residential (*i.e.,* landline) provision, which is not applicable here, uses the phrase "initiate any telephone call" (47 U.S.C. § 227(b)(1)(B)), federal courts, such as those cited above, have uniformly held that "make" or "initiate" under either provision means to "physically place" the call.  *See also In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7980 (Jul. 10, 2015) ("2015 FCC Order") (clarifying that there must be a "direct connection between a person or entity and the making of a call" for direct TCPA liability).

1    In this regard, there are no factual allegations in the Complaint suggesting that either of the

2    simultaneously-received text messages Plaintiff allegedly received were physically sent by either of

3    the Defendants.  In fact, Plaintiff pleads that the first word of the texts at issue plainly indicates they

4    were from "Masorini" and included a coupon for that retailer's online store.  *See* Compl. ¶¶ 31-32.

5    Plaintiff also alleges that he "received spam texts" only "subsequent to a purchase on the [Masorini]

6    website" that were purportedly sent to the number he voluntarily provided to Masorini while

7    completing the check-out process on Masorini's site.  *Id.*  ¶¶ 30, 33, 36.  Moreover, Plaintiff admits

8    that "Shopify provides the infrastructure and software for online retailers to build their online

9    presence, including their point-of-sale systems" and "checkout pages," and that those retailers—not

10   Defendants—set up their own online businesses using the "customizable" Shopify platform,

11   including through downloading third-party texting apps.  *Id.*  ¶¶ 2, 17, 20 (emphasis added).  In

12   other words, ***Plaintiff alleges that Defendants did <u>not</u> physically place the texts at issue***, as the

13   decision to download and use third party apps for texting lies exclusively with the individual

14   retailer.  Therefore, Plaintiff has failed to state a claim for direct TCPA liability and, thus, his TCPA

15   claim (Count I) should be dismissed on this basis.  *See, e.g., Weisbuch v. Cnty. of L.A.*, 119 F.3d

16   778, 783 n.1 (9th Cir. 1997) ("'[A] plaintiff may plead [him]self out of court'" if he "plead[s] facts

17   which establish that he cannot prevail on his … claim.");  *Frank,* 2019 WL 4855378, at *2 (no direct

18   TCPA liability where complaint did "not provide any allegations [defendant] took steps physically

19   necessary to place the call" and "[m]erely alleging that [defendant] 'made' or 'initiated' the call is

20   not sufficient to allege a TCPA claim");  *Freedom Forever, LLC*, 2019 WL 1790471, at *3 (no

21   direct liability where there were "no facts from which the Court could infer that an employee of

22   [defendant physically] made the calls");  *Hurley v. Messer*, 2018 WL 4854082, at *3 (S.D.W.Va.

23   Oct. 4, 2018) (dismissing where no facts suggesting defendant physically placed calls at issue);

24   *Sepehry-Fard v. Dep't Stores Nat'l Bank*, 15 F. Supp. 3d 984, 987-88 (N.D. Cal. 2014), *aff'd in*

25   *part,* 670 F.App'x 573 (9th Cir. 2016) (dismissing where "no facts alleged showing ***why*** plaintiff

26   believe[d] [defendants] were responsible for specifically identified calls") (emphasis in original).

27   Notwithstanding the foregoing pleaded concessions, Plaintiff offers numerous unsupported,

28   conclusory, and oft-contradictory conclusions, all vaguely suggesting that Defendants themselves

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

(as opposed to the users of the Shopify platform) also may have physically placed the texts at issue. Yet many of these conclusions are improperly plead on "information and belief" and all are without any supporting facts and, thus, are wholly inadequate to avoid dismissal.[4]  *See, e.g.,* Compl. ¶¶ 2, 3, 23-24, 28, 29, 30, 33, 37, 43, 46.  Indeed, to highlight only a few particularly egregious examples of such insufficient allegations, Plaintiff concludes, without alleging a single supporting fact, that:

- "Shopify is actively involved in and participates directly in the creation, development, maintenance, management, and marketing of its retailers online businesses.…" *Id*. ¶ 2.

- "On information and belief, Defendants work together in concert on these marketing campaigns and are jointly responsible for the generation, operation, direction and transmission of SMS and text messaging marketing campaigns for all Shopify businesses." *Id*. ¶ 29.

-  "Shopify participates directly in the collection, storage, transfer, and use of consumer' [*sic*] cellular telephone numbers to send text message marketing advertisements through automatic telephone dialing systems, either directly or through Shopify-developed or Shopify-approved apps." *Id*., ¶ 46.

Such threadbare allegations not only contradict the Complaint's factual concessions above, but they also do not support a plausible inference that Defendants "directly" sent the text messages at issue here. *See, e.g., Canary,* 2019 WL 1275343, at *3 (dismissing, in part, on direct liability grounds where complaint lacked "sufficient facts to support a plausible inference that [defendants physically] dialed [plaintiff's] telephone number"); *Meeks v. Buffalo Wild Wings, Inc*., 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018) (recognizing that direct TCPA liability does not extend to those who might merely have had some minor role "in the causal chain that results in the making of a … call") (quoting *In the Matter of the Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)).  *See also Starr*, *Gilead*, *Sprewell*, *Pareto*, *TranzVia*, and *Menzel*, *supra*.

In sum, because Plaintiff does not allege any specific, non-conclusory facts that Defendants themselves physically placed the text messages at issue, he has not stated a plausible claim for direct TCPA liability.  *See, e.g.*, *Frank*, *Freedom Forever*, *Hurley*, *Sepehry-Fard*, *Canary*, and *Meeks*, *supra*.  *See also Childress*, 2018 WL 4684209, at *3 ("The mere conclusion that the [ATDS] responsible for the call belonged to [d]efendant, without any factual allegations to support that conclusion, does not constitute a factual allegation that, if proven, would establish that

---

[4] *See, e.g., Menzel v. Scholastic, Inc.,* 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018) ("A conclusory allegation based on information and belief remains insufficient under *Iqbal/Twombly*.").

1  [d]efendant 'made,' or 'physically placed' the call to [p]laintiff's cell phone" as required for direct

2  TCPA liability).  Thus, Plaintiff's Complaint should be dismissed under Rule 12(b)(6) on this basis.

3  **B.   The Complaint Fails to Plead Facts that Defendants Were "So Involved" in**
    **Sending the Texts At Issue That They Should Be Deemed to Have Sent Them**
4    **For Direct TCPA Liability Purposes.**

5  Plaintiff also offers an alternative theory of direct TCPA liability, asserting in conclusory

6  fashion that Defendants were somehow "deeply involved" in placing the two texts at issue—texts

7  which, again, he concedes were sent to him by a third-party retailer after making a purchase on that

8  retailer's website—that Defendants themselves should be deemed to have initiated them.  *See*

9  Compl. ¶¶ 45-46.  Put another way, Plaintiff suggests that Defendants were effectively acting as the

10  retailer that physically sent him the texts at issue and, as such, should be subject to direct TCPA

11  liability.  Plaintiff's novel "platform provider liability" theory is unavailing for several reasons:

12  As an initial matter, platform provider liability under the TCPA is rare, and the FCC has

13  made clear that providers who play a minimal role in sending text messages are not liable for

14  unwanted robocalls without more.  *See* 2015 FCC Order, 30 FCC Rcd. at 7980.  "Some of the

15  factors used to evaluate an entity's involvement in placing [a] call" or text that the FCC has

16  identified and various courts have considered "include: [1] the extent to which the provider/host

17  controls the messaging; [2] the extent to which the provider/host controls the timing or sending of

18  the message; [3] the extent to which the provider/host controls the recipient list; [4] the extent to

19  which the provider/host 'willfully enables fraudulent spoofing of telephone numbers'; [5] the extent

20  to which the provider/host assists customers in blocking Caller ID; [6] whether the provider/host

21  knowingly allows its customers to use the platform in a way that violates the TCPA; [and] [7]

22  whether the service or platform is purely reactive in nature, sending messages as proscribed and

23  arranged by the customer."  *Frank*, 2019 WL 4855378, at *2 (quoting 30 FCC Rcd. at 7980-84).

24  Moreover, the vast majority of Ninth Circuit district courts—including this Court on

25  multiple occasions—that have analyzed whether a platform provider is liable for calls initiated by

26  the users of that platform have ruled in the ***provider's favor***.  *See, e.g.*, *Meeks,* 2018 WL 1524067,

27  at *1-6 (dismissing case with prejudice as to platform provider because it did not decide whether,

28  when, or to whom to send the messages or otherwise actively participate in developing the

Manatt, Phelps &
Phillips, LLP
Attorneys at Law
Los Angeles

- 10 -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

1   messages or controlling the initiation of the messages); *Frank*, 2019 WL 4855378, at *1-3 (no

2   direct TCPA liability where provider's only "role in the alleged violation was providing a

3   programmable platform from which [retailers] initiate[d] the [text] message" at issue); *Cour v.*

4   *Life360, Inc.,* 2016 WL 4039279, at *3-4 (N.D. Cal. July 28, 2016) (dismissing TCPA claim

5   because app users decided whether, when, and to whom to send texts, not the provider); *McKenna*

6   *v. WhisperText*, 2015 WL 5264750, at *5 (N.D. Cal. Sept. 9, 2015) ("[E]ven though WhisperText

7   uses automated processes to harvest and upload a user's selected phone numbers and then send

8   invitational messages, that is insufficient to make WhisperText the maker or initiator of a call using

9   an ATDS under the TCPA.") (granting Rule 12(b)(6) motion and applying 2015 FCC Order);

10   *Reichman v. Poshmark, Inc.*, 2017 WL 2104273, at *4 (S.D. Cal. May 15, 2017) (provider was not

11   "so involved in the making of the call as to be deemed the initiator" where the user must navigate a

12   number of prompts in order to program the cloud-based dialer) (quoting 2015 FCC Order).

13          The recent *Meeks* case from this District is particularly instructive on this point.  There, the

14   plaintiff alleged that he voluntarily provided his cell number to a hostess at a restaurant so that he

15   could be notified when his table was ready, and he subsequently received texts from that restaurant

16   thereafter which, unlike in this case, included hyperlinks to the platform provider's (Yelp) website.

17   *See* 2018 WL 1524067 at *1-2.  Dismissing the complaint with prejudice, the Court evaluated

18   whether the plaintiff had sufficiently alleged any facts that would establish that the platform

19   provider initiated the texts sent to the plaintiff for direct TCPA liability.  *Id*. at *4.  Recognizing the

20   provider itself did not physically send the texts and considering the FCC's "involvement" factors

21   noted above, Judge Gonzalez Rodgers found that (i) "[w]hile plaintiff allege[d] that the restaurants

22   use Yelp's 'platform' to send the offending text messages [], he d[id] not allege that Yelp decided

23   whether, when, or to whom to send the messages" and (ii) instead, "his allegations regarding Yelp

24   [only] pertain[ed] to its purported business model and the general advertising and analytics services

25   Yelp provides to restaurants."  *Id*. at *5.  Therefore, Judge Gonzalez Rodgers ruled that the provider

26   was not subject to direct *or* vicarious TCPA liability, and denied leave to amend.  *Id*. at *5-6.

27   *Accord Frank*, 2019 WL 4855378, at *2-3 (granting platform provider's Rule 12(b)(6) motion and

28   holding that, because there were no factual allegations the provider "exercised any discernible

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

involvement in deciding whether, when, or to whom the text message is sent, or what the text message said," the plaintiff did not successfully allege the provider was "the maker or initiator of the text message" within the meaning of the TCPA to state a plausible direct TCPA liability claim).

*Meeks*, *Frank*, and the weight of other directly on-point authorities on this issue, including those above, are fatal to Plaintiff's misguided efforts to state a direct TCPA liability claim against Defendants here. Indeed, like in *Meeks* and *Frank*, Plaintiff provides no specific (nor any) factual allegations that Defendants exerted any control over the recipient lists, timing, or content of the texts sent by the users of the Shopify platform, much less that they or any of the users blocked his caller ID. Instead, Plaintiff merely concludes that "Shopify **counsels retailers** on best practices with respect to data collection and text message marketing, including the content and timing of test [*sic*] message marketing campaigns." Compl. ¶ 22 (emphasis added); *see also id.* ¶ 46 (similar allegations but adding buzzword "actively"). In other words, according to Plaintiff, text messages sent by retailers (using apps downloadable from Shopify.com) are "proscribed and arranged" by the retailers, not Defendants, and thus are "purely reactive in nature." *Frank*, 2019 WL 4855378, at *2 (quoting 30 FCC Rcd. at 7980-84). Further, it is patently unreasonable to infer that "Shopify" was somehow actively and directly involved in micromanaging ***all 800,000+ retail customers' online businesses*** and text message marketing campaigns to be deemed to have initiated them. Compl. ¶¶ 16, 19. Such an inference is not only absurd but also is inherently implausible, and the Court need not accept it when ruling here. *See, e.g., Starr*, *Gilead*, *Sprewell*, *Pareto*, and *TranzVia*, *supra*.

Moreover, neither the "knowing" nor the "spoofing" factors suggested by the FCC and noted above apply in this case. In fact, as to the former, Plaintiff's allegation that Shopify "knowingly" allowed its many retailer users to send unlawful telemarketing messages (Compl. ¶ 46) is entirely unsubstantiated, conclusory, and plainly contradicted by other allegations pleaded in the Complaint and, as such, is insufficient. *See also Kauffman v. CallFire, Inc.*, 141 F. Supp. 3d 1044, 1050 (S.D. Cal. 2015) (platform deemed not to be the initiator because it lacked involvement in selecting the content, timing, and recipients of the messages or notice of any illegal activity).

For instance, Plaintiff concludes that "Shopify is aware, based on its participation in the creation and maintenance of retailers' checkout pages, whether a particular retailer has obtained

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

express written consent from a consumer to use the consumer's cellular telephone number for text message marketing campaigns, as required by the TCPA."  Compl. ¶¶ 3, 46.  The only "facts" Plaintiff even arguably alleges to support that bald conclusion are that "Shopify provides a host of software, products, tools, and services that assist retailers in setting up their businesses" including a "back-office suite of services and products, ranging from payment and point-of-sale systems to billing and shipping software, marketing tools, services, business counseling, and other customer engagement tools and services."  *Id*. ¶ 17.  But this is simply a list of the software, products and features one would expect from any e-commerce platform, and it in no way supports a plausible inference that Defendants played an ***active*** and ***direct*** role in setting up or the ongoing operation of the retailers' online stores, let alone that Defendants have specific actual knowledge about ***each*** of its 800,000+ retailer users' individualized marketing practices, including Masorini in particular.  To the contrary, as Plaintiff himself points out, each of those retailers customizes its ***own*** online store and manages its ***own*** customer list in a myriad of ways.  *See* Compl. ¶ 20 (admitting each retailer customizes the platform to its specific needs and preferences).  Thus, Plaintiff's conclusory allegation "on information and belief" that "a retailer's TCPA compliance efforts are fully visible to Shopify" (*id*. ¶ 21) is an entirely unreasonable inference that is plainly contradicted by other alleged facts and, as such, should be rejected out of hand.  *See, e.g., Menzel,* 2018 WL 1400386, at *2.

Similarly, Plaintiff merely parrots the language of the 2015 FCC Order by making a single, unsupported, and almost totally unintelligible allegation that "Shopify also spoofs the source of its text message advertisements, identify the source only via an SMS short code used by many Shopify retailers."  Compl. ¶ 46.  Yet, Plaintiff only alleges two texts from the same retailer, so his rank speculation that "many" retailers may have used the same SMS short code used by Masorini to text him is entirely baseless as alleged.  Further, Plaintiff's speculative allegation that two retailers may utilize the same texting app and send text messages from the same short code (which is an exceedingly common practice) in no way demonstrates ***fraudulent*** spoofing, much less that the ***Defendants*** either spoof or willfully enable fraudulent spoofing; and in any event, this bald allegation is insufficient to survive dismissal under federal pleading standards.  *See, e.g., Chang v. Rockridge Manor Condo*., 2008 WL 413741, at *10 (N.D. Cal. Feb. 13, 2008), *aff'd,* 344 F.App'x

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

1    365 (9th Cir. 2009) (dismissing claim that was "ultimately nothing more than speculation");

2    *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975 (N.D. Cal. 2005) ("It is not

3    enough for a plaintiff simply to plead and pray. Allegation and speculation are insufficient.").[5]

4         All told, Plaintiff does not allege that "Shopify" is anything more than just an e-commerce

5    platform, and there are no factual allegations supporting a conclusion that Defendants are so

6    "involved" in the texts at issue as to be deemed to have made or initiated them, let alone that they

7    had any knowledge of users' (or any) unlawful activity, to subject them to direct TCPA liability.

8    Thus, Plaintiff has failed to state a claim for direct TCPA liability for this additional reason.

9         **C.     Plaintiff Has Failed to State a Claim for Vicarious TCPA Liability.**

10        It is unclear whether Plaintiff alleges that Defendants are directly or vicariously liable under

11   the TCPA, or perhaps both.  *See* Compl. ¶¶ 26, 28, 33, 35, 37, 43, 46 (also suggesting the texts at

12   issue may have been sent by Defendants' unnamed "agents," or that Defendants are the "agents" or

13   act on "behalf" of the retailers who use the platform).  To the extent Plaintiff intended to allege

14   Defendants are also vicariously liable under the TCPA for the texts at issue, his claim still fails.

15        Federal courts considering vicarious TCPA liability apply common law agency principles.

16   *See, e.g., Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018) (citing, *inter alia*,

17   Restatement (Third) of Agency ("Restatement")); *Pascal*, 2019 WL 5212961, at *3 (citing *Jones*).

18   Agency requires a special, consensual relationship between a principal and an agent.  *See*

19   Restatement, § 1.01, cmt. c ("[A]gency posits a consensual relationship in which one person, to one

20   degree or another or respect or another, acts as a representative of or otherwise acts on behalf of

21   another person with power to affect the legal rights and duties of the other person.").  Specifically,

22   "[a]gency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to

23   another person (an 'agent') that the agent shall act on the principal's behalf and subject to the

24   principal's ***control***, and the agent manifests assent or otherwise consents so to act."  *TranzVia LLC*,

25   2017 WL 5992123, at *6 (quoting *Jones v. Royal Admin. Servs., Inc.*, 866 F.3d 1100, 1105 (9th Cir.

26   2017)) (emphasis added).  And "[t]hough 'the precise details of the agency relationship need not be

27        _____

     [5] Further, to the extent Plaintiff was attempting to plead ***fraudulent*** spoofing, he fails to meet

28   the heightened standard to do so under the federal rules.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud
     or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

1   pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable

2   inference that an agency relationship existed.'" *Meeks*, 2018 WL 1524067, at *5.

3   Further, in the TCPA context, courts have widely recognized that vicarious liability cannot

4   attach without the **"essential ingredient" of control**.  *See, e.g., Jones,* 887 F.3d at 450.  Thus,

5   federal courts in the Ninth Circuit (including in this District in particular) and elsewhere routinely

6   dismiss TCPA claims premised on vicarious liability at the pleading stage due to failure to allege

7   sufficient facts establishing an agency relationship with or control over an agent.  *See, e.g.*, *Meeks*,

8   2018 WL 1524067, at *6 (no vicarious TCPA liability where "plaintiff fail[ed] to allege a

9   traditional agency relationship" between platform provider and platform user because plaintiff did

10   not allege provider "had any control over [the user] with respect to sending the text messages, nor

11   that [the user] acted in any way on [the provider]'s behalf"); *Freedom Forever, LLC*, 2019 WL

12   1790471, at *2–4 (grating motion to dismiss, in part, where allegations of vicarious liability were

13   "wholly conclusory"); *Childress*, 2018 WL 4684209, at *3 (a plaintiff "cannot simply allege

14   general control in a vacuum"); *TranzVia LLC*, 2017 WL 5992123, at *6-7 (dismissing where no

15   facts alleged showing defendant had control over the third party that made the calls); *Panacci v. A1

16   Solar Power, Inc.*, 2015 WL 3750112, at *7 (N.D. Cal. June 15, 2015) (dismissing where plaintiff

17   did not allege defendant "controlled, authorized, or even knew about [third party's] phone calls or

18   that [defendant] had any control over" the alleged caller).[6]  This Court should rule similarly.

19   Here, like in *Meeks* and the directly on-point cases cited above (among many others),

20   Plaintiff does not allege with any factual support the essential ingredient of control in this case, as is

21   required to successfully state a vicarious TCPA liability claim.  Instead, he merely alleges in

22   conclusory fashion that some unnamed "agents" may have sent the texts at issue (although on

23   whose "behalf" they were sent is unclear).  *See* Compl. ¶¶ 35, 37, 43.  Plaintiff does not allege any

24   non-conclusory facts that Defendants (i) exerted any modicum of control over the third party that

25   actually sent the texts, (ii) supervised or controlled the texts sent by that party, or (iii) instructed

26   [6] *See also Canary*, *Pascal*, *Abante*, *Lucas*, and *Jones*, *supra*; *Stark v. Stall*, 2019 WL 3718878, at *6 (S.D. Cal. Aug. 7, 2019); *Kristensen v. Credit Payment Servs. Inc.*, 2015 WL 4477425, at *2-7 (D. Nev. July 20, 2015), *aff'd*, 879 F.3d 1010 (9th Cir. 2018); *Freidman v. Massage Envy Franchising, LCC*, 2013 WL 3026641, at *3 (S.D. Cal. June 13, 2013); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084-85 (C.D. Cal. 2012), *aff'd*, 582 F.App'x 678, 679 (9th Cir. 2014).

1    third parties to send texts on their behalf.  *See, e.g., Jones*, 887 F.3d at 450 (considering these and

2    other factors).  In fact, as an e-commerce platform provider, it would not make any sense for texts

3    offering a ***discount on clothing*** to be sent on Defendants' behalf, and calling them "both a principal

4    and an agent" (Compl. ¶¶ 28, 46) simultaneously is contradictory and nonsensical, and thus should

5    be rejected.  *See Hernandez v. Select Portfolio, Inc*., 2015 WL 3914741, at *10 (C.D. Cal. June 25,

6    2015) ("Contradictory allegations … are inherently implausible, and fail to comply" with federal

7    pleading standards); *Freedom Forever, LLC,* 2019 WL 1790471, at *4 (rejecting substantially

8    similar "agency" allegations as "wholly conclusory" and thus insufficient to state a claim for relief).

9         In sum, to the extent Plaintiff seeks to hold Defendants liable <u>at all</u> under the TCPA, his

10   Complaint falls woefully short of satisfying federal pleading standards, and thus Count I should be

11   dismissed.  *See Gulden v. Consol. World Travel Inc.*, 2017 WL 3841491, at *3 (D. Ariz. Feb. 15,

12   2017) (dismissing where plaintiff "offer[ed] no factual support" for conclusion that the "[d]efendant

13   was the source of the alleged calls," ruling that "[b]ecause identity is a necessary element of all of

14   Plaintiff's [TCPA] claims, this deficiency warrants dismissal of all of Plaintiff's claims.").

15        **D.    <u>Plaintiff Fails to Plead Facts Supporting His Conclusions About ATDS Use.</u>**

16        Regardless of Plaintiff's liability theory, his Complaint still fails to state a TCPA claim

17   because it contains only conclusory allegations that the texts at issue were sent using an ATDS.

18        Federal courts routinely dismiss pleadings merely containing a formulaic recitation of the

19   elements of a TCPA claim.  *See, e.g.*, *Freedom Forever, LLC*, 2019 WL 1790471, at *2-3 ("Absent

20   factual allegations giving rise to an inference that the calls were made using an ATDS…, Plaintiff's

21   [TCPA] claims … fail."); *Priester*, 2017 WL 4237008, at *2 ("[T]he court rejects any contention

22   that a TCPA plaintiff's pleading obligation is satisfied by generically alleging the use of an ATDS

23   by a defendant, in a manner that simply parrots the statutory language."); *Armstrong v. Investor's

24   Bus. Daily, Inc.*, 2018 WL 6787049, at *6 (C.D. Cal. Dec. 21, 2018) (dismissing where allegations

25   were a "mere recitation of the legal definition of an ATDS as defined by TCPA"); *Freidman,* 2013

26   WL 3026641, at *2–3 (dismissing TCPA claims as a "speculative" and "formulaic recitation of the

27   elements of a cause of action" where the texts received by the plaintiff were allegedly "generic and

28   impersonal ... but that is not enough to make the claims plausible").  Such is true in this case.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

Here, the **sum total** of Plaintiff's ATDS allegations, again mostly pleaded on "information and belief" and all without supporting facts, are a handful of entirely conclusory references to "automated" texts or "automatic telephone dialing systems" (Compl. ¶¶ 3-4, 27, 29, 33-34, 40, 46) and one nearly-verbatim and one verbatim recitation of the statutory definition of an ATDS (*id.* ¶¶ 37, 42).  *See also* 47 U.S.C. § 227(a)(1) ("The term 'automatic telephone dialing system' means equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers.").  These bald formulaic recitations and legal conclusions are plainly insufficient to state a plausible TCPA claim as a matter of law.  *See, e.g., Freedom Forever,* 2019 WL 1790471, at *2-3; *Priester*, 2017 WL 4237008, at *2.

Moreover, Plaintiff's allegations suggest targeted messaging rather than random or impersonal messages, which further belies his conclusory ATDS allegations.  *See, e.g., Weisberg v. Stripe, Inc.*, 2016 WL 3971296 *3, (N.D. Cal. July 25, 2016) (holding that use of ATDS was not sufficiently alleged because the plaintiff's own allegations "suggest[ed] direct targeting that is inconsistent with the sort of random or sequential number generation required for an ATDS"); *Freedom Forever, LLC*, 2019 WL 1790471, at *3 (dismissing where there were no factual allegations "giving rise to an inference that the calls were made using an ATDS (*i.e.*, that the manner of the calls indicated that they were random or impersonal)"); *Meeks*, 2018 WL 5093942, at *4 (dismissing where allegations did "not suggest that the text messages at issue were sent en masse or at random, but rather that they were targeted [at the plaintiff] and required human intervention" and, thus, the "non-conclusory allegations d[id] not render it plausible that an ATDS was used").

Indeed, as discussed above, Plaintiff alleges that he had a prior relationship with the retailer that sent the texts at issue, received them shortly after completing a sale on that retailer's website, and they were specifically addressed to him by name.  *See* pp. 3-4, 6-16, *supra*.  These allegations do not support an inference an ATDS was used to send the texts at issue here, and thus further warrant dismissal.  *See, e.g., Weisberg, Freedom Forever,* and *Meeks, supra*; *see also Ewing v. GoNow Travel Club, LLC*, 2019 WL 3253058, at *3 (S.D. Cal. July 19, 2019) ("[W]here factual allegations made in a plaintiff's complaint 'are unsupported by any specific facts and appear less likely than the alternate inference, namely that plaintiff received a customer specific text [or call] ...

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

1   through human agency, rather than an ATDS' the pleading standard for this element is not met.").

2   ## II.   PLAINTIFF FAILS TO PLEAD ANY PLAUSIBLE COMMON LAW CLAIMS.

3   Plaintiff's three alleged common law claims (Counts II through IV) also fail on several

4   levels and, therefore, should be dismissed under Rule 12(b)(6) for at least the following reasons:

5   ### A.   Plaintiff Fails to Plead Vicarious Liability Under State Law (Counts II – IV).

6   As a threshold matter, it is unclear whether Plaintiff is only alleging Defendants are

7   vicariously liable for Masorini's actions under California state law, like his TCPA claim. *See*

8   Compl. ¶¶ 26, 28, 33, 35, 37, 43, 46.   Nevertheless, the standard for vicarious liability under

9   California law is essentially the same as it is under federal law, and it turns on common law

10  agency principles and whether the principal had "control" over the alleged agent. *See, e.g., Lewis*

11  *v. Superior Court*, 30 Cal. App. 4th 1850, 1869 (1994), *as modified on denial of reh'g* (Dec. 29,

12  1994); *Myers v. Trendwest Resorts, Inc.,* 148 Cal. App. 4th 1403, 1434–35, (2007).   And as noted

13  above (*see* pp. 14-16, *supra*), Plaintiff has alleged no facts supporting a plausible inference of an

14  agency relationship between Defendants and its retailers, much less that Defendants had the right

15  to control the retailers' conduct.   Thus, Defendants cannot be vicariously liable under state law.

16  ### B.   Plaintiff Fails to State a Claim for Common Law Negligence (Count II).

17  "Under California law, '[t]he elements of negligence are: (1) defendant's obligation to

18  conform to a certain standard of conduct for the protection of others against unreasonable risks

19  (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection

20  between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss

21  (damages).'" *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 158

22  Cal. App. 4th 983, 994 (2008)) (internal quotations omitted).   Plaintiff fails here on several levels.

23  **First**, Plaintiff has not alleged any "duty" owed by Defendants.   Although each person has a

24  general duty to act with "reasonable care under the circumstances," there is no special duty "to

25  control the conduct of another" or "to warn those endangered by such conduct" under California

26  law unless the defendant has "a special relationship" either "with the foreseeably dangerous person

27  that entails an ability to control that person's conduct" or "with the potential victim that gives the

28  victim the right to expect protection." *Brown v. USA Taekwondo*, 40 Cal. App. 5th 1077, 1091

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

1   (2019) (citing *Regents of Univ. of Calif. v. Superior Court*, 4 Cal.5th 607, 618 (2018)).   In this

2   regard, and as discussed above, Plaintiff has not alleged any facts that Defendants had any ability to

3   control Masorini's conduct, let alone that Masorini was "foreseeably dangerous" or that there was

4   any "special relationship" between Defendants and **Plaintiff**, who is Masorini's customer.

5          **Second**, Plaintiff also has pleaded no facts that Defendants breached their general duty of

6   care.   To the contrary, he merely concludes that "Shopify" acted without due care with regard to

7   obtaining, using and/or disseminating his cell phone number without his prior express written

8   consent.  *See* Compl. ¶ 50.  But again, Plaintiff does not allege that **Defendants** did anything with

9   his phone number, and only alleges he made a purchase from **Masorini's** online store, voluntarily

10  provided **Masorini** his number in connection with a purchase from **Masorini**, and subsequently

11  received two simultaneous texts that on their face purportedly came from **Masorini** offering him a

12  **Masorini** coupon.  *Id.* ¶¶ 30-32.  Thus, Plaintiff does not allege Defendants breached any duty.  *See*

13  *also Scotten v. First Horizon Home Loan Corp.,* 2012 WL 3277104, at *6 (E.D. Cal. Aug. 9, 2012)

14  (conclusory allegation and formulaic recitations of the elements of negligence insufficient).

15         **Third**, Plaintiff fails to allege facts suggesting he suffered actual damages.  *See* Compl. ¶ 54

16  (concluding he has "been damaged by Defendants' negligent actions and failure to use reasonable

17  care as alleged herein in an amount to be proven at trial.").   This too is fatal to his negligence claim

18  and warrants dismissal.  *See, e.g., Mardirosian v. Nationwide Credit, Inc.,* 2012 WL 13035476, at

19  *4, n.1 (C.D. Cal. Oct. 10, 2012) ("Plausibly pleading actual damages is … a necessary element of

20  negligence.") (citing *Croucier v. Chavos*, 207 Cal. App. 4th 1138, 1147 (2012)).

21      **C.**   **The Complaint Fails to State Claims for "Invasion of Privacy" or "Unlawful Intrusion" (Counts III and IV).**

22         It is unclear precisely what theory of recovery Plaintiff intends in this case by his "Invasion

23  of Privacy" claim in Count III of the Complaint, and whether that theory is separate from or

24  duplicative of his "Unlawful Intrusion" claim in Count IV (or his TCPA claim).  Under California

25  law, "invasion of privacy" is an umbrella term covering claims like (1) unreasonable "intrusion"

26  upon solitude; (2) appropriation of name or likeness; (3) unreasonable publicity given to private

27  life; (4) criminal eavesdropping; and (5) publicity that unreasonably places one in a false light.  *See,*

28

Manatt, Phelps &
Phillips, LLP
Attorneys at Law
Los Angeles

- 19 -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

*e.g., Alim v. Superior Court*, 185 Cal. App. 3d 144, 150 (1986); *Marich v. MGM/UA Telecomm., Inc.*, 113 Cal. App. 4th 415, 421 (2003); *Taus v. Loftus*, 40 Cal. 4th 683, 705 (2007); *see also Prince v. Out Pub. Inc.,* 2002 WL 7999, at *7–8 (Cal. Ct. App. Jan. 3, 2002) (discussing elements for a claim for "invasion of privacy by unlawful intrusion") (citing various cases, unpublished).

Regardless, to the extent Plaintiff's claims in Counts III and IV rest entirely upon Plaintiff's cell phone number supposedly being "accessed, shared, disseminated and/or sold to others without [his] knowledge or consent," *see* Compl. ¶ 59, there are no factual allegations in the Complaint suggesting that ***Defendants*** ever accessed, shared, disseminated, and/or sold Plaintiff's cell phone number to anyone, as discussed above. *See also id.* ¶¶ 30-32. Thus, Counts III and IV of the Complaint fail to state a claim and should be dismissed under Rule 12(b)(6) for this reason alone.

Moreover, an action for "invasion of privacy" for an "improper intrusion into private matters"—assuming that is what Plaintiff intended to plead in Counts III and IV, which again is unclear—has two essential elements: (1) an intrusion into a "private place, conversation, or matter as to which plaintiff possessed a reasonable expectation of privacy" (2) "in a manner highly offensive to a reasonable person." *Taus,* 40 Cal. 4th at 724 (citing *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998)). Plaintiff has not satisfied these elements for at least two reasons:

<u>**First**</u>, there is no blanket right to privacy in a person's phone number, particularly where (as here) it is voluntarily provided by that person to third parties. *See, e.g.*, *Padron v. Lara,* 2018 WL 2213462, at *13 (E.D. Cal. May 11, 2018), *aff'd sub nom. Padron v. City of Parlier,* 776 F.App'x 453 (9th Cir. 2019) ("[T]he Supreme Court found that an individual has no legitimate expectation of privacy in information that he voluntarily turns over to third parties and, while conversations may be entitled to privacy, society is not prepared to recognize a reasonable expectation of privacy in a phone number that is dialed.") (citing *Smith v. Maryland*, 442 U.S. 735, 743-744) (1979)). And even if there were, Plaintiff fails to plead any specific facts, beyond bald conclusions, that Defendants intruded on that right, as noted above. Thus, Plaintiff has not satisfied the first element.

<u>**Second**</u>, to determine whether a defendant's alleged conduct meets the second element of this claim, California courts consider "the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting

1    into which he intrudes, and the expectations of those whose privacy is invaded." *Deteresa v. Am.*

2    *Broad. Cos., Inc.*, 121 F.3d 460, 465 (9th Cir. 1997) (quoting *Hill v. Nat'l Collegiate Athletic Ass'n*,

3    7 Cal.4th 1, 26, (1994)).  None of the alleged conduct in this case could even remotely be classified

4    as "highly offensive to a reasonable person."  *See, e.g., Marseglia v. JP Morgan Chase Bank*, 750

5    F. Supp. 2d 1171, 1177–78 (S.D. Cal. 2010) (defendant's behavior not "highly offensive" to

6    amount to "invasion of privacy" under California law, even though it allegedly placed 50 calls in

7    one week and called on a daily basis early in the morning and late at night, where, among other

8    things, there were no facts alleged that defendant ever made direct contact with plaintiffs).  To the

9    contrary, Plaintiff's ***voluntary*** provision of his cell phone number to an online retailer in connection

10   with a purchase from that retailer's website, and his subsequent receipt of a sum total of ***two*** texts

11   from that same retailer, are not "highly offensive" conduct.  Thus, Plaintiff has not (and indeed

12   cannot) satisfy the second element of his common law "privacy" claims in Counts III and IV either.

13   **III.    ALTERNATIVELY,   PLAINTIFF'S   FAULTY   CLASS   AND   OTHER**
     **ALLEGATIONS SHOULD BE STRICKEN UNDER FED. R. CIV. P. 12(F) AND 23.**

14          In the unlikely event that some or all of Plaintiff's fatally flawed claims survive dismissal

15   under Rule 12(b)(6) (and they should <u>not</u>, for all the reasons above), the Court should nevertheless

16   strike Plaintiff's faulty class definition (*see* Compl. ¶ 38), other class-related allegations, and other

17   facially deficient allegations pursuant to Rules 12(f) and/or 23 for at least the following reasons:

18          **A.    <u>Common Issues of Law and Fact Do Not Predominate.</u>**

19          For starters, Plaintiff's proposed class definition and class allegations should be stricken

20   because common issues of law and fact do not predominate.  In this regard, Fed. R. Civ. P. 23(b)(3)

21   requires that "questions of law or fact common to class members predominate over any questions

22   affecting only individual members[.]"  To meet this requirement, "common questions must be a

23   significant aspect of the case that can be resolved for all members of the class in a single

24   adjudication."  *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 470 (N.D. Cal. 2014) (quoting *Berger v.*

25   *Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (*abrogated on other grounds by*

26   *Microsoft v. Baker*, 137 S. Ct. 1702 (2017)).  This Court and others have recognized that class

27   definitions that would require individualized factual inquiries are properly stricken at the pleadings

28   stage.  *See, e.g.*, *Pepka*, 2016 WL 8919460, at *4; *Stokes*, 2015 WL 709201, at *4.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

1    In the present case, Plaintiff's proposed class definition is vaguely defined to include "[a]ll

2    persons in the United States who received one or more unauthorized text message advertisement

3    from, through, or on behalf of Shopify or Shopify businesses, within the applicable statute of

4    limitations period."  Compl. ¶ 38.  In this regard, however, it is apparent from the face of the

5    Complaint that common questions of law and fact do not predominate and that individualized

6    inquiries would be necessary and, as such, that such a class cannot be certified under Rule 23(b)(3).

7    For example, as discussed above, Plaintiff alleges there are over 800,000 retailers

8    worldwide who utilize the Shopify platform, each of whom customizes their own online store

9    utilizing any number of the thousands of third-party apps available for download in the Shopify

10   App Store.  But because the retailers can customize and operate their online stores in a myriad of

11   ways, any text messages a retailer sends could be sent from any number of third party applications

12   downloadable through the Shopify App Store and/or via dialing systems entirely outside the

13   Shopify platform.  And the content of each such text would be just as diverse, potentially

14   encompassing everything from marketing campaigns, to order confirmations and shipping updates,

15   to personal conversations between retailer and customer.  Thus, while Plaintiff has failed to allege

16   any facts regarding the system used to text him (which alone warrants dismissal of Plaintiff's

17   claims), it is only reasonable to infer that text messages sent to class members were sent from any

18   number of different dialing systems, each with different capabilities and used in different ways and

19   for different purposes by each individual retailer.  Courts routinely deny class certification where, as

20   here, individual investigations into differing dialing systems would be required.  *See, e.g.*, *Bridge v.*

21   *Credit One Fin.*, 294 F. Supp. 3d 1019, 1032-33 (D. Nev. 2018) (commonality lacking where

22   plaintiff was called by two different vendors who may or may not have been using two different

23   dialing systems, only one of which could have resulted in a violation); *Trenz v. On-Line Adm'rs,*

24   *Inc.*, 2017 WL 3084158, at *3 (C.D. Cal. Apr. 26, 2017) (denying certification where two different

25   dialing systems were used).  Similarly, where the purpose of each challenged call is not "uniform in

26   purpose," courts have found that individualized issues predominate.  *See, e.g.*, *Newhart v. Quicken*

27   *Loans Inc.*, 2016 WL 7118998, at *4 (S.D. Fla. Oct. 12, 2016).  This Court should rule similarly.

28   Here, because Plaintiff makes no plausible factual allegations that all, most, or even a

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 22 -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

1   significant majority of the 800,000+ Shopify retailers use, or that the innumerable number of third-

2   party apps employed by those retailers use, the exact same dialing methodology or that their texts

3   are all uniform in content or purpose, whether any text messages advertisements in this case were

4   sent with an ATDS in violation of the TCPA is not a common question that can be resolved by

5   generalized proof across the entire class in one adjudication.   Rather, it would necessitate

6   individualized factual and legal inquiries into each retailer's and/or third-party apps' specific dialing

7   system(s).  Thus, the Court should strike the class under Rules 12(f) and 23 on this basis as well.

8        The individualized inquiries do not end there.  Whether, when, how, and to what extent

9   customers may have provided consent (*i.e.*, "authorization") to each of those 800,000+ retailers

10   worldwide that use the Shopify platform, as Plaintiff alleges, is as diverse as each retailer's

11   customized store.  In fact, as Plaintiff admits, some stores may provide a line item to collect their

12   customers' prior express written consent, whereas others may have opted not to do so.  *See* Compl.

13   ¶ 3, 20, 30, 36.  Some may also have physical locations in addition to their online stores, and may

14   have obtained their customers' prior express written consent in person, or through a call-to-action

15   (*i.e.*, where the consumer is sent an introductory text and must respond to opt-in).  Courts have

16   consistently denied class certification where individualized consent inquiries predominate.  *See,*

17   *e.g., Revitch v. Citibank*, 2019 WL 1903247, at *4 (N.D. Cal. Apr. 28, 2019) (denying certification

18   where "adjudicating whether or not members of the class consented to its calls lacks a common

19   method of proof."); *Katz v. Am. Honda Motor Co.*, 2017 WL 3084272, at *4-5 (C.D. Cal. Jun. 29,

20   2017) (denying certification where consent cannot be established through class-wide proof).  Courts

21   have also stricken class allegations at the pleadings stage for this reason.  *See, e.g., Flynn v.*

22   *DIRECTV, LLC*, 2016 WL 4467885, at *1 (D. Conn. Aug. 23, 2016) (striking class allegations

23   where individual issues of "consent" would predominate).  *See also Gene and Gene LLC v. BioPay*

24   *LLC*, 541 F.3d 318, 327 (5th Cir. 2008) ("[T]he predominant issue of fact [in a TCPA case] is

25   undoubtedly one of individual consent") (emphasis in original).  Thus, Plaintiff's class allegations

26   should also be stricken in this case because individualized consent inquiries would predominate.

27   **B.   Plaintiff's Proposed Class Definition Is Also Impermissibly "Fail-Safe".**

28   Plaintiff's proposed class definition should be stricken under Rule 12(f) for the additional

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

1    reason that it is impermissibly "fail-safe." In this regard, it is well accepted that a proposed "class

2    definition is inadequate if a court must make a determination of the merits of the individual claims

3    to determine whether a person is a member of the class." *Hanni v. Am. Airlines, Inc.*, 2010 WL

4    289297, at *9 (N.D. Cal. Jan. 15, 2010). In other words, a proposed class definition is

5    impermissibly "fail-safe" in violation of Rule 23 where, as here, "the class itself is defined in a way

6    that precludes membership unless the liability of the defendant is established." *Kamar v.*

7    *Radioshack Corp.*, 375 F.App'x 734, 736 (9th Cir. 2010). Thus, Rule 12(f) motions to strike

8    proposed fail-safe class definitions are routinely granted in TCPA cases like this one at the

9    pleadings stage. *See, e.g.*, *Pepka*, 2016 WL 8919460, at *3 (striking fail-safe TCPA class definition

10   where it would require the Court to engage in an improper merits determination to determine

11   membership); *Dixon v. Monterey Fin. Servs., Inc.*, 2016 WL 4426908, at *2 (N.D. Cal. Aug. 22,

12   2016) (striking fail-safe class where "determination of whether a person is a member … is

13   dependent on whether he/she prevails on the merits of the TCPA claim alleged" in the complaint).

14       Here, Plaintiff's proposed class is impermissibly "fail-safe" because membership depends

15   on the merits of the underlying TCPA claim. Specifically, Plaintiff defines the class, in part, as

16   every person in the United States who has received at least one "unauthorized text message

17   advertisement". *See* Compl. ¶ 38. But whether a text message is "authorized" or "unauthorized"

18   (*i.e.*, whether the recipient gave "prior express consent" to be texted) under the TCPA is a merits-

19   based inquiry that makes the foregoing definition improperly "fail-safe." *See, e.g.*, *Pepka*, 2016

20   WL 8919460, at *3 (striking class definition as fail-safe where it included, *inter alia*, calls not made

21   "with the recipient's prior express consent"). Similarly, determining whether a given text message

22   constitutes an unlawful "advertisement" requires a legal determination. *See* 47 C.F.R. §

23   64.1200(f)(1) (defining "advertisement"). Therefore, whether a putative class member received an

24   "unauthorized" text message "advertisement" in this case depends entirely upon a finding of TCPA

25   liability and, as such, Plaintiff's class definition is impermissibly "fail-safe" and properly stricken.[7]

26       [7] Since Plaintiff's class definition is properly stricken for the reasons above, all remaining

27   "class" or "class member" allegations (*see, e.g.*, Compl. ¶ 5, 10, 34-35, 37, 39, 40, 43, 44, 47-48, 50-51, 53-54, 57-60, 63-65, and Prayer) would be superfluous and immaterial and, therefore, should

28   be stricken as well. *See, e.g.*, *Alan v. BrandRep, Inc.*, 2016 WL 10988679, at *3 (C.D. Cal. Nov. 28, 2016) (Rule "12(f) authorizes the Court to strike any redundant matter *sua sponte*.").

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

**C.** **Plaintiff Seeks Damages That are Unrecoverable As a Matter of Law and Therefore Those Allegations Should Be Stricken Under Rule 12(f).**

Finally, Plaintiff seeks, among other relief, "attorneys' fees and costs" and "[p]unitive exemplary" damages. *See* Compl., Prayers For Relief Nos. 4 and 7. Such damages are not recoverable here. *See, e.g., Short v. New Penn Fin., LLC*, 2019 WL 1552860, at *5 (Cal. Ct. App. Apr. 10, 2019) (attorneys' fees and costs not recoverable in tort actions) (unpublished, citation omitted); *S. Pac. Transp. Co. v. State of Calif.* 115 Cal. App. 3d 116, 122 (Ct. App. 1981) (in California, punitive or exemplary damages "in a tort action [are] recoverable only in cases involving oppression, malice, or fraud"); *Smith v. Microsoft Corp.,* 297 F.R.D. 464, 469 (S.D. Cal. 2014) (the TCPA does not provide for attorneys' fees); *Schreck v. NCO Fin. Sys., Inc.,* 2014 WL 12656617, at *3 (N.D. Ga. Aug. 15, 2014) ("The TCPA does not allow for punitive damages…."). Thus, those allegations should be stricken under Rule 12(f). *See Bowoto,* 2007 WL 2349338, at *2.

## CONCLUSION

For all of the reasons above, Defendants respectfully request that the Court enter an order (1) dismissing the Complaint, in its entirety and with prejudice,[8] for failing to state a claim against Defendants under Rule 12(b)(6), <u>or</u> (2) should the Court not dismiss in whole or in part, striking Plaintiff's class definitions and other class related allegations under Rules 12(f) and 23.

Dated: December 23, 2019                MANATT, PHELPS & PHILLIPS, LLP

By: /s/ John W. McGuinness
   Christine R. Reilly
   John W. McGuinness

   *Attorneys for Defendants*
   *SHOPIFY (USA) INC. AND SHOPIFY INC.*

---

[8] A complaint may be dismissed with prejudice under Rule 12(b)(6) where, as here, the "plaintiff could not amend the complaint to state a viable claim 'without contradicting any of the allegations in the original complaint.'" *Meeks*, 2018 WL 1524067, at *6 (quoting *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990)). Like in *Meeks*, the Complaint in this case, as noted above, "affirmatively establishes that [Defendants] did not [physically] initiate the text messages at issue and that no entity acted in any way on [their] behalf" and, as such, Plaintiff "cannot sustain a claim against [Defendants] without contradicting his existing allegations." *Id*. Consequently, the Court should dismiss Plaintiff's Complaint with prejudice for the same reason.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 25 -

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE CERTAIN ALLEGATIONS FROM
PLAINTIFF'S CLASS ACTION COMPLAINT

1

## <u>CERTIFICATE OF SERVICE</u>

2

The undersigned hereby certifies that the foregoing document was electronically filed and served on all counsel of record in the above-captioned matter on December 23, 2019 via the Court's CM/ECF filing service.

3

<u>/s/ John W. McGuinness</u>

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28