UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SHESKI,<br><br>            Plaintiff,<br><br>     v.<br><br>SHOPIFY (USA) INC., et al.,<br><br>            Defendants. | Case No. 19-cv-06858-HSG<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 15 |

Pending before the Court is Defendants' motion to dismiss Plaintiff's class action complaint, for which briefing is complete. Dkt. No. 15 ("Mot."), 21 ("Opp."), 22 ("Reply"). For the reasons articulated below, the Court **GRANTS** Defendants' motion to dismiss, **WITH LEAVE TO AMEND**.

**I.   BACKGROUND**

On October 21, 2019, Plaintiff David Sheski filed a class action complaint on behalf of a putative nationwide class, alleging violations of the Telephone Consumer Protection Act ("TCPA"), and three state common law claims: negligence, invasion of privacy, and unlawful intrusion. Dkt. No. 1 ("Compl."). Plaintiff's claims are based on Defendant Shopify (USA) Inc. and Defendant Shopify Inc.'s (collectively, "Shopify" or "Defendants") alleged "unlawful practice of making, facilitating, and participating in unauthorized text message marketing campaigns en masse to consumers' cellular telephones." *Id.* ¶ 1. Shopify is an e-commerce company that "provides the infrastructure and software for online retailers to build their online presence, including their point-of-sale systems and specifically the tools to structure retailers' checkout webpages to collect consumers' personal identification information, including their cellular numbers." *Id.* ¶ 2.

Plaintiff purchased a product from the retailer Masorini, an online clothing store with no

physical locations, whose website is "maintain[ed], operate[d], direct[ed] and/or otherwise control[led]" by Shopify. *Id.* ¶ 30. When processing the purchase on the website, Plaintiff used the online checkout form which "specifically brands it as a Shopify platform, labeling the online order form 'Shopify Checkout.'" *Id.* ¶ 30. It additionally included "a line item input field for consumers to provide their telephone number," where the form "indicates the telephone number is '(For shipping updates).'" *Id.* Specifically, "[t]here [was] no line item check-box on the checkout page for consumers to click to indicate their prior express written consent to have their phone number used for text advertisements." *Id.* After completing the purchase, Plaintiff "received two text messages to his cell phone," on or about November 26, 2018. *Id.* ¶ 31. Both messages read "Masorini: Hey David. Cyber Monday! 30% OFF – Code: "CM30" Shop here! [sic] – STOP 17908 to opt-out." *Id.* ¶¶ 31–32.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).  The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint.  *Sprewell*, 266 F.3d at 988.

If the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal citations and quotation marks omitted).

### III. ANALYSIS

Defendants argue that Plaintiff fails to state a TCPA claim since the complaint fails to sufficiently allege that Defendants were "directly involved" with, or vicariously liable for, placing the texts at issue.  Mot. at 6–16.  Defendants also argue that Plaintiff fails to state a claim for the three common law claims.  *Id.* at 18–21.  The Court addresses each argument in turn below.

#### A. TCPA

The TCPA makes it unlawful

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call. . . .

47 U.S.C. § 227(b)(1)(A)(iii).  To state a claim under the TCPA, a Plaintiff must allege that "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system ["ATDS"]; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); *see also* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  A text message constitutes a "call" for purposes of the TCPA. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2012).

##### i. Direct Liability

Defendants first argue that Plaintiff has failed to plead sufficient facts to establish that

3

Shopify sent or was directly involved with sending the text messages at issue. Defendants point to the FCC's guidance in a 2015 order to argue that they do not qualify as having made a call under the TCPA and therefore cannot be liable for any TCPA violation. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7980–84 (2015) (hereinafter, "2015 TCPA Declaratory Ruling"), *set aside in part by ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir. Mar. 16, 2018).

        The TCPA and its implementing regulations do not define the term "make a call" to determine who may be liable under the statute. The FCC has concluded that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *In the Matter of the Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013). As for whether entities that provide software applications or platforms that facilitate calling can be liable, the FCC explained that it "look[s] to the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA." 2015 TCPA Declaratory Ruling, 30 FCC Rcd. at 7980. Applying this standard, the FCC determined that the maker of an app called TextMe did not make or initiate calls when its app users used the TextMe app to send invitational text messages; rather it was the app user that initiated the text messages through "affirmative choices." *Id.* at 7983. Specifically, the FCC found it significant that the "app user [had to]: (1) tap a button that reads 'invite your friends'; (2) choose whether to 'invite all their friends or [] individually select contacts'; and (3) choose to send the invitational text message by selecting another button." *Id.* at 7983–84.

        Defendants argue that similar to TextMe, they only provide a platform that third-party retailers use to send text messages to consumers. Shopify points to numerous cases in support of its position, primarily relying on *Meeks v. Buffalo Wild Wings, Inc.*, No. 17-cv-07129-YGR, 2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) and *Frank v. Cannabis & Glass, LLC*, No. 19-cv-00250-

4

SAB, 2019 WL 4855378 (E.D. Wash. Oct. 1, 2019). In *Meeks*, the plaintiff provided his cellphone number to a restaurant hostess so he could be notified when his table was ready, and later received texts from the restaurant that included links to the website of platform provider Yelp. 2018 WL 1524067 at *1–2. The *Meeks* court held that "[w]hile plaintiff allege[d] that the restaurants use Yelp's 'platform' to send the offending text messages . . . he d[id] not allege that Yelp decided whether, when, or to whom to send the messages." *Id.* at *5. Instead, "his allegations regarding Yelp pertain[ed] to its purported business model and the general advertising and analytics services Yelp provides to restaurants." *Id.* Somewhat similarly, in *Frank* the court dismissed the complaint, finding "no allegations that Defendant Springbig exercised any discernible involvement in deciding whether, when, or to whom the text message is sent, or what the text message said." 2019 WL 4855378 at *2. Here, Defendants argue that Plaintiff fails to provide any factual allegations that Defendants "exerted any control over the recipient lists, timing, or content of the texts sent by the users of the Shopify platform." Mot. at 12.

In response, Plaintiff argues that none of Defendants' cited cases are on point based on the allegations in the Complaint. Opp. at 14–15. For example, unlike the platform providers at issue in the other cases, Plaintiff alleges that "Shopify continues to be actively involved in its retailers' businesses both directly and indirectly" even after the retailers select their platform package, by providing "the creation of an online store, 24/7 support from dedicated Shopify employees, ongoing business counseling services, shipping services, and the creation of a point-of-sale software system, among other things." Compl. ¶ 18. Additionally, Plaintiff points to (1) Shopify's receipt of a percentage of retailers' revenues, *id.* ¶ 25, (2) the use of the same SMS short code by different retailers as evidence of "a common Shopify or Shopify-approved source," *id.* ¶ 26, (3) Shopify's awareness, "based on its participation in the creation and maintenance of retailers' checkout pages, whether a particular retailer has obtained express written consent form a consumer to use the consumer's cellular telephone number for text message marketing campaigns," *id.* ¶ 23, and (4) Shopify's "counsel[ to retailers] on best practices with respect to data collections and text message marketing, including the content and timing of te[x]t message marketing campaigns," *id.* ¶ 22.

Importantly, however, these allegations do not lead to the inference that Shopify sent or was directly involved in sending the text messages at issue in this case. That Shopify provides the template for the checkout form, offers a suite of apps (including texting apps) that can integrate into its platform, provides counseling on best practices for marketing, and takes a percentage of the retailer's revenue, does not indicate that Shopify has any control over a retailer's actual text marketing campaigns. Further, much like Yelp's platform in *Meeks* or the TextMe application in the 2015 TCPA Declaratory Ruling, the fact that Shopify provides a platform to send the text messages such that the SMS short code is the same for all of the retailers does not lead to the inference that Shopify, rather than the individual retailer identified in the text itself, controlled the content of and sent the message. Here, Plaintiff received only two text messages, which specifically identified Masorini as the sender. *See* Compl. at ¶ 26.[1]

Thus, even making all inferences in Plaintiff's favor, the allegations provide no factual basis to establish that Shopify was directly involved in the procurement of consumers' phone numbers, stores those numbers, transfers the numbers to texting apps, or approves the messages to be sent to those numbers. While Shopify might provide additional resources beyond those provided by the platform provider in *Meeks*, these resources and features do not suggest that Shopify has any control over any individual retailer's marketing campaigns. Instead, the factual allegations suggest that Shopify provides a platform with a suite of capabilities and options for the retailer, which then sends text messages to numbers obtained when processing a direct sale to a consumer, such as Plaintiff.[2]

---

[1] The timing of the texts further belies Plaintiff's allegation that Defendant sent the text messages at issue. Similar to *Meeks*, the texts were sent after Plaintiff interacted with the retailer, providing his number for "shipping updates." *See* 2018 WL 1524067 at *4 ("[T]he complaint indicates that the timing of the text messages was linked to information in the [retailer's], not [Defendants'] possession.").

[2] In his Opposition to Defendant's motion to dismiss, Plaintiff references facts not in the Complaint to support his argument that Defendant was directly involved in sending the text messages. *See* Opp. at 7–9. However, "[a] Complaint cannot be amended through allegations made in an opposition to a motion to dismiss." *Remington v. Mathson*, 42 F. Supp. 3d 1256, 1278 n.3 (N.D. Cal. 2012), *aff'd*, 575 F. App'x 808 (9th Cir. 2014). Accordingly, the Court does not consider these new facts. *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

1    Because Plaintiff fails to plead sufficient facts to show that Defendant sent the text
2    messages, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's TCPA claim.

### ii. Vicarious Liability

Defendants next argue that Plaintiff fails to state a claim for vicarious liability under the TCPA. "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014), *aff'd*, 136 S. Ct. 663 (2016), as revised (Feb. 9, 2016). "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (quoting Restatement (Third) of Agency § 1.01 (Am. Law Inst. 2006)). "For an agency relationship to exist, an agent must have authority to act on behalf of the principal and '[t]he person represented [must have] a right to control the actions of the agent.'" *Id.* (quoting Restatement (Third) of Agency § 1.01 cmt. c).

Here, Plaintiff simply points to Shopify's relationship with its retailers as evidence of an agency relationship via explicit and implicit authorization. Opp. at 17–18. This is insufficient. There are no factual allegations that support any sort agency relationship outside of Plaintiff's conclusory statement that "Defendants and their agents transmit text messages." Compl. at ¶ 37. Instead, it appears (accepting the well-pleaded factual allegations as true, as the Court must at this stage) that Defendants provide a suite of software options for retailers, who then determine which options to utilize. "In order to allege a traditional agency relationship, Plaintiff would have to allege Defendant controlled or had the right to control [the entity responsible for the text messages] and, more specifically, the manner and means of the text message campaign they conducted." *Linlor v. Five9, Inc.*, No. 17-cv-218-MMA (BLM), 2017 WL 2972447, at *3 (S.D. Cal. July 12, 2017) (quotations omitted). The only semblance of an allegation suggesting that Masorini acted on Defendants' behalf is the claim that Defendants receive a percentage of retail sales by each retailer (ranging from 2% to 0.5% of sales depending on the plan selected). *See id.*

7

1    at ¶ 18.  But this in no way supports an inference that retailers act on Defendants' behalf or that
2    Defendants have any sort of control over third-party retailers.  The Complaint entirely fails to
3    plausibly plead any sort of agency relationship.
4        Accordingly, Plaintiff's vicarious liability claim is also **DISMISSED**.
5        **B.**    **Common Law Claims**
6        Defendants also argue that Plaintiff fails to state a claim for negligence, invasion of
7    privacy or unlawful intrusion.  Mot. at 18–21.
8            **i.**    **Negligence**
9    "Under California law, "[t]he elements of negligence are: (1) defendant's obligation to
10   conform to a certain standard of conduct for the protection of others against unreasonable risks
11   (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close
12   connection between the defendant's conduct and resulting injuries (proximate cause); and (4)
13   actual loss (damages)."  *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry*
14   *v. Sax*, 70 Cal. Rptr. 3d 519 (Cal. Ct. App. 2008)).  Defendants argue that Plaintiff failed to allege
15   any duty owed by Defendants to consumers, any breach of a general duty of care (since no specific
16   duty is alleged), or any actual damages, even if breach was alleged.  Mot. at 18–19.  The Court
17   agrees.
18       "[T]here is generally no duty to protect others from the conduct of third parties."  *Regents*
19   *of Univ. of California v. Superior Court*, 413 P.3d 656, 669 (Cal. 2018).  "[P]lantiffs alleging a
20   defendant had a duty to protect them must establish: (1) that an exception to the general no-duty-
21   to-protect rule applies and (2) that the *Rowland* factors support the imposition of the duty."  *Brown*
22   *v. USA Taekwondo*, 253 Cal. Rptr. 3d 708, 723 (Cal. Ct. App. 2019), *as modified on denial of*
23   *reh'g* (Nov. 6, 2019) (citing *Rowland v. Christian*, 443 P.2d 561 (Cal. 1968)).  The *Rowland*
24   factors include "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff
25   suffered injury, the closeness of the connection between the defendant's conduct and the injury
26   suffered, the moral blame attached to the defendant's conduct, the policy of preventing future
27   harm, the extent of the burden to the defendant and the consequences to the community of
28   imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and

8

prevalence of insurance for the risk involved." *Regents*, 413 P.3d at 670 (quoting *Rowland*, 443 F.2d at 564)).

Plaintiff fails to establish that Defendants' owe any duty to Masorini's customers. Plaintiff alleges that Defendants "failed to comply with third-party vendor rules, which require Defendants to have consumers' prior express written consent prior to sharing their personal identification information with the vendors," suggesting that these rules created a duty owed to Plaintiff and other consumers. Compl. at ¶ 52. Plaintiff provides no further allegations.[3] This vague reference to third-party vendor rules does not establish that an exception to the general rule applies, or that any duty should be imposed under *Rowland*. Moreover, for the same reasons discussed above, Plaintiff has failed to adequately plead that Defendants themselves sent the texts. As pled, Plaintiff's negligence claim thus fails.

Plaintiff further fails to allege any damages in this case. The TCPA provides specific statutory damages for unconsented marketing calls precisely because proving damages from a marketing phone call or a text is particularly difficult. Here, Plaintiff entered his phone number into the retail checkout and received two marketing texts afterwards. Plaintiff has not even alleged that he was charged for those texts or that he received other texts due the dissemination of the phone number outside of the retailer such that the conduct was particularly oppressive or a nuisance.

Because Plaintiff fails to adequately plead duty or damages, the Court dismisses the negligence cause of action for failure to state a claim.

### ii. Invasion of Privacy or Unlawful Intrusion

As Defendants note, it is not entirely clear what claim Plaintiff is attempting to state under the third and forth causes of action. "At common law there are four kinds of invasion of privacy actions which sound in tort . . . (1) unreasonable intrusion upon solitude; (2) appropriation of name or likeness; (3) unreasonable publicity given to private life; and (4) publicity that unreasonably

---

[3] Again, Plaintiff attempts to add facts in his Opposition that are not in the Complaint to support its argument that Defendants owed a duty of care. *See* Opp. at 18–19. The Court will not consider these new allegations.

9

places one in a false light." *Alim v. Superior Court*, 229 Cal. Rptr. 599 (Cal. Ct. App. 1986). Plaintiff's third purported cause of action is invasion of privacy and his fourth purported cause of action is unlawful intrusion, but unlawful intrusion is simply one alternative means of stating an invasion of privacy claim. So the Court assumes that Plaintiff is claiming unreasonable intrusion upon solitude.

That tort subjects to liability "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . ., if the intrusion would be highly offensive to a reasonable person." *Taus v. Loftus*, 151 P.3d 1185, 1212 (Cal. 2007). Plaintiff does not allege any facts sufficient to support such a claim here. Even accepting Plaintiff's factual allegations, he voluntarily entered his phone number into the form, and even if he provided the number solely for "shipping updates," as a matter of law using that phone number to send two texts for other purposes related to the retailer does not rise to the level of being "highly offensive to a reasonable person." *See Folgelstrom v. Lamps Plus, Inc.*, 125 Cal. Rptr. 3d 260, 266 (Cal. Ct. App. 2011), *as modified* (June 7, 2011) (holding that defendant's "conduct of obtaining his ZIP code under false pretenses and using it for its own marketing purposes . . . [did] not meet the standard of 'highly offensive.'"); *see also Marseglia v. JP Morgan Chase Bank*, 750 F. Supp. 2d 1171, 1178 (S.D. Cal. 2010) (dismissing an invasion of privacy claim where defendant placed 50 calls to plaintiff, but "there [were] no facts alleged upon which this Court could infer plaintiffs ever answered any of these calls or defendant ever made any direct contact with plaintiffs that might be construed as annoying or harassing conduct.").

Accordingly, the Court dismisses Plaintiff's third and fourth causes of action for failure to state a claim.

//
//
//
//
//
//

## IV. CONCLUSION

For the reasons noted above, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's Class Action Complaint for failure to state a claim **WITH LEAVE TO AMEND**.[4] Any amended complaint must be filed within twenty-eight (28) days of the date of this order, and Plaintiff may not add any new claims or defendants in any such complaint.

**IT IS SO ORDERED.**

Dated: 5/13/2020

*Haywood S. Gilliam Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[4] The Court need not address Defendants' motion to strike and it is **DENIED AS MOOT**. Depending on the nature of an amended complaint, if any, Defendants may raise the argument again.

11